## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **DEVDAN AMIR YEARWOOD-CABBELL,** | § | |
| | § | |
| | § | |
| **PLAINTIFF,** | § | **CIVIL ACTION FILE** |
| | § | |
| **v.** | § | **NUMBER** |
| | § | |
| **GWINNETT COUNTY, GEORGIA;** | § | |
| **CHIEF A.A. "BUTCH" AYERS;** | § | |
| **DETECTIVE A.P. PALMER;** | § | |
| **DETECTIVE J.M. BOYD; AND** | § | |
| **INVESTIGATOR S.R. DONAHUE,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

## <u>COMPLAINT FOR DAMAGES</u>

Now comes Plaintiff, **DEVDAN AMIR YEARWOOD-CABBEL**
(hereinafter referred to as "Plaintiff"), by and through his undersigned counsel of
record and hereby files his *Complaint for Damages* as follows:

## NATURE OF THE CASE

### 1.

The above-styled case for damages is brought pursuant to 42 USC § 1983 and 42 USC § 1988 for violations of Plaintiff's federal rights as guaranteed by the Fourth Amendment of the United States Constitution, and pursuant to Georgia law.

### 2.

Plaintiff seeks damages he sustained as a result of Defendants' unlawful seizure and malicious prosecution arising from his arrest on November 21, 2019. The arrest occurred as a direct result of a facially invalid search warrant. The search and seizure were that of a general search and inquisition, as the search warrant failed to describe with some degree of specificity the items to be searched for and seized.

### 3.

On November 21, 2019, as a direct result of the facially invalid search warrant and a tainted photographic identification lineup on November 7, 2019, Plaintiff was arrested and incarcerated in the common jail of Gwinnett County for 1,316 days.

**4.**

The arrest warrants, arrest of Plaintiff, and subsequent in-custody interview on November 21, 2019, all arose from the tainted evidence of the illegal search. These issues of the facial invalidity of the search warrant and "fruit of the poisonous tree" were all determined in Plaintiff's favor in both the original criminal case and subsequent appellate decisions.

**5.**

Defendants are prohibited by the doctrines of res judicata and collateral estoppel from relitigating such issues, inasmuch as the underlying criminal case provided a full and fair opportunity to all parties to litigate the issues as determined by the Gwinnett Superior Court and Court of Appeals of Georgia.

**6.**

At all relevant times hereto, Defendants Detective A.P. Palmer, Detective J.M. Boyd, and Investigator S.R. Donahue were acting in accordance with and pursuant to the unconstitutional policies, customs, patterns, and/or practices established by Defendant Gwinnett County and Defendant A.A. "Butch" Ayers, the former Chief of police who had final decision-making authority with regard to performance of Defendant Gwinnett County's police functions, including but not limited to the

hiring, training, supervision, and discipline of police officers employed by Gwinnett County Police Department.

## 7.

(a) Contrary to binding and well-established authority such as *Groh v. Ramirez et al.*, 540 U.S. 551, 563-565 (2004), *Battle v. The State*, 275 Ga. App. 301 (2005), and *Bryant v. The State*, 301 Ga. App. 617, 619-620(2) (2017) Defendants Palmer, Boyd, and Donahue were acting in accordance with and pursuant to the unconstitutional policies, customs, patterns, and/or practices established by Defendant Gwinnett County[1] and Defendant A.A. "Butch" Ayers, the former Chief of police who had final decision-making authority with regard to performance of Defendant Gwinnett County's police functions, including but not limited to the hiring, training, supervision, and discipline of police officers employed by Gwinnett County Police Department. None of the Defendants are entitled to qualified immunity and any assertion thereof should result in sanctions against the offending party and their attorney.

---

[1] See also *The State v. Wilson*, 315 Ga. 613, 614-616(2023) another Gwinnett County Police Department search warrant struck down finding that well-established precedent mandated suppression where the particularity requirement was ignored.

(b) On May 27, 2022, Detective A.P. Palmer appeared and testified under oath at motions hearing in <u>State of Georgia v. Devdan Amir Yearwood-Cabbel</u>, Indictment Number 20-B-00092-2, Gwinnett Superior Court and specifically testified as to his training and supervision relating as follows:

"Q The scope of the search warrant is what's set forth in the search warrant; correct, Corporal Palmer?

**A I've always been trained to list the residence in that portion and then list the scope of what we are actually looking for in the narrative of the search warrant.** (Emphasis supplied.)

Q There's nothing in the search warrant that incorporates that. There's no scope of the search warrant other than the residence of James Robertson, D.O.B. 3-30-2022[sic], located at 4014 Waters End Lane, Snellville, Georgia 30039, a single residence—excuse me, a single-family home inside Gwinnett County; correct?

A Correct.

Q There's nothing else in that search warrant that tells you what to search for; correct?

A That's correct." (Plaintiff's Exhibit "1", p. 61, ln. 10-24.)

Plaintiff by way of further allegation and averment invokes the incorporation-by-reference doctrine and attaches hereto and incorporates herein a copy of the certified transcript(Volume 2) of the motions hearing on May 27, 2022, in <u>State of Georgia v. Devdan Amir Yearwood-Cabbel</u>, Indictment Number 20-B-00092-2, Gwinnett Superior Court as Plaintiff's Exhibit Number "1".

Defendants Palmer, Boyd, and Donahue were acting in accordance with and pursuant to the unconstitutional policies, customs, patterns, and/or practices established by Defendant Gwinnett County and Defendant A.A. "Butch" Ayers, the former Chief of police who had final decision-making authority with regard to performance of Defendant Gwinnett County's police functions, including but not limited to the hiring, training, supervision, and discipline of police officers employed by Gwinnett County Police Department. None of the Defendants are entitled to qualified immunity and any assertion thereof should result in sanctions against the offending party and their attorney.

## PARTIES

### 8.

At the time of the subject incident, Plaintiff, **DEVDAN AMIR YEARWOOD-CABBEL,** was 17 years, 7 months, 4 days old African American male and resident of the State of Georgia.

### 9.

At all times material hereto, **Detective A.P. Palmer** ("Detective Palmer" or "Palmer") Gwinnett County Police Badge Number 1704, was a police officer with supervisory authority over the underlying criminal case employed by the Gwinnett County Police Department ("GCPD") and was acting under color of state law and within the scope of his employment duties as a law enforcement officer pursuant to GCPD's policies, practices, and customs. Defendant Palmer is being sued in his individual capacity.

### 10.

At all times material hereto, Defendant **Detective J.M. Boyd** ("Detective Boyd" or "Boyd") was a police officer employed by the Gwinnett County Police Department ("GCPD") and was acting under color of state law and within the scope

of his employment duties as a law enforcement officer pursuant to GCPD's policies, practices, and customs. Defendant Boyd is being sued in his individual capacity.

**11.**

At all times material hereto, Defendant **Investigator S.R. Donahue** ("Investigator Donahue" or "Donahue") GCPD Badge Number 1622 was a police officer employed by the Gwinnett County Police Department ("GCPD") and was acting under color of state law and within the scope of his employment duties as a law enforcement officer pursuant to GCPD's policies, practices, and customs. Defendant Donahue is being sued in his individual capacity.

**12.**

Defendant **Gwinnett County, Georgia** is a political subdivision of the State of Georgia vested with limited powers and authority as provided by state law.

**13.**

Defendant **Chief A.A. "Butch" Ayers** is the former Chief of Police over the Gwinnett County Police Department who served from October 25, 2014, to November 15, 2019.

**14.**

(a) At all material times herein, former Chief Ayers, as well as his predecessors and successors Chiefs of Police, were and are  the final policymaker for Gwinnett County and had final decision-making authority with regard to Gwinnett County's exercise of its police powers including but not limited to hiring, firing, retention, termination, training, discipline, and supervision of GCPD officers; establishing and implementing GCPD's official written policies and procedures; and managing, directing, supervising, and controlling GCPD's operation and administration of GCPD and its disciplinary process (individual references made to GCPD, the Chief of Police, or the County herein are intended to encompass the Chief of Police and the County).

(b)  Gwinnett County should be held liable for all the Defendants' actions or inactions as Plaintiff's constitutional rights were clearly violated by all the Defendants, and such violation resulted from an official Gwinnett County policy, an unofficial custom of Gwinnett County, or because Gwinnett County was deliberately indifferent in its failure to train or supervise.

## JURISDICTION AND VENUE

### 15.

This Court has jurisdiction over the federal claims asserted herein pursuant to 28 USC § 1331 and 28 USC § 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 USC § 1367.

### 16.

Defendants are residents of the State of Georgia and are subject to the jurisdiction of this Court.

### 17.

Venue is proper in this Court pursuant to 28 USC § 1391 because the facially invalid search was executed and Plaintiff's arrest occurred at 4014 Waters End Lane, Snellville, Gwinnett County, Georgia 30039, which is located within the Northern District of Georgia.

### 18.

Following the subject incidents on October 28, 2019 (execution of search warrant), November 7, 2019 (arrest warrants issued for Plaintiff), and November 21, 2019 (arrest and in-custody statement of Plaintiff), the Plaintiff was indicted in

Counts 8, 9, and 10 of State of Georgia v. Devdan Amir Yearwood-Cabbel, Indictment Number 20-B-00092-2.

**19.**

Various interlocutory and direct appeals to the Court of Appeals of Georgia[2] resulted in the ultimate findings and determination that Plaintiff had standing to challenge the seizure of evidence as a social guest or invited guest and the search warrant was facially invalid as the search and seizure was that of a general search and inquisition, as the search warrant failed to describe with some degree of specificity the items to be searched for and seized. *The State v. Yearwood-Cabbel*, 370 Ga. App. 471 (2024).

**20.**

Subsequent thereto after another full and fair opportunity for hearing, the trial court entered its *Order Granting First Amendment to Suppress Eyewitness Identification and First Amendment to Motion Challenging Voluntariness of*

---

[2] *Devdan Amir Yearwood-Cabbel v. The State*, Application Number A22I0217, Court of Appeals of Georgia; *Devdan Amir Yearwood-Cabbel v. The State*, Application Number A23I0047, Court of Appeals of Georgia; Devdan *Amir Yearwood*-Cabbel, Docket Numbers A23A0067 and A23A0435, Court of Appeals of Georgia; and *The State v. Devdan Amir Yearwood-Cabbel*, Docket Number A23A1728, Court of Appeals of Georgia.

*Statement* on April 8, 2024, specifically finding as a matter of fact and law that the "… State despite being on notice of Defendant's contentions as to 'fruit of the poisonous tree" failed, refused, or abandoned any effort to produce any evidence whatsoever to refute Defendant's claim that the doctrine of 'fruit of the poisonous tree' barred the introduction of the photographic identification lineup or in-custody statement of Defendant. There is no evidence in the record before this Court that the exceptions of the independent source doctrine or the ultimate discovery doctrine have any application to this case. Therefore, in fact (complete absence of any facts by the State) and law this Court must find the 'fruit of the poisonous tree' applicable and controlling." Plaintiff by way of further allegation and averment invokes the incorporation-by-reference doctrine and attaches hereto and incorporates herein a copy of the certified transcript of the motions hearing on March 29, 2024, in State of Georgia v. Devdan Amir Yearwood-Cabbel, Indictment Number 20-B-00092-2, Gwinnett Superior Court as Plaintiff's Exhibit Number "2". Further, Plaintiff by way of further allegation and averment invokes the incorporation-by-reference doctrine and attaches hereto and incorporates herein a copy  of the *Order Granting First Amendment to Suppress Eyewitness Identification and First Amendment to Motion Challenging Voluntariness of Statement* filed on April 8, 2034, in State of Georgia v. Devdan Amir Yearwood-Cabbel, Indictment Number 20-B-00092-2, Gwinnett

Superior Court as Plaintiff's Exhibit Number "3". Thereafter, on April 12, 2024, the trial court entered its *Order for Nolle Prosequi* as to Counts 8, 9, and 10 against the Plaintiff. Plaintiff by way of further allegation and averment invokes the incorporation-by-reference doctrine and attaches hereto and incorporates herein a copy of the *Order for Nolle Prosequi* filed on April 12, 2024,   in <u>State of Georgia v. Devdan Amir Yearwood-Cabbel</u>, Indictment Number 20-B-00092-2, Gwinnett Superior Court as Plaintiff's Exhibit Number "4".

## 21.

The applicable statute of limitations governing the claims asserted herein, is controlled by OCGA § 51-7-40 which provides that "The criminal prosecution forming the basis for an action for malicious prosecution must be ended before the right of action for malicious prosecution accrues." An action for malicious prosecution is an action for damages for injuries to the person of the plaintiff and such actions termination if the State takes no further action, and there has been no further action.

## 22.

On May 10, 2024, Plaintiff served upon Michael P. Ludwiczak, County Attorney(in-house), Law Department, Gwinnett County Government a presentation

of claim in accordance with OCGA § 36-11-1 and was informed by Mr. Ludwiczak that "we will be in contact once we've had the chance to review the same." Thereafter, on May 31, 2024, Plaintiff's lead counsel agreed with outside counsel Russell A. Britt, Hall Booth Smith, P.C. to extend the deadline for responding to the presentation of claim through and including June 30, 2024, however, an intentional dilatory response was not received until July 15, 2024. Plaintiff by way of further allegation and averment invokes the incorporation-by-reference doctrine and attaches hereto and incorporates herein a copy of the presentation of claims dated May 9, 2024, as Plaintiff's Exhibit Number "5". Sovereign immunity is not a defense to Plaintiff's claims under 42 USC § 1983 and 42 USC § 1988 for violations of Plaintiff's federal rights as guaranteed by the Fourth Amendment of the United States Constitution, and Gwinnet County has waived its sovereign immunity as codified in OCGA § 36-92-2.

## FACTUAL ALLEGATIONS

### 23.

On October 25, 2019, at approximately 08:32:17 am, Detective A.P. Palmer, GCPD Badge Number 1704 prepared an Affidavit and Application for Search Warrant for the premises known as 4014 Waters End Lane, Snellville, Gwinnett

County, Georgia, alleging **"The list of certain property, items, articles, instruments to be searched for and seized are located in GWINNETT COUNTY, GEORGIA and are specifically described as follows: The residence of James Robertson (DOB: 03.30.2002) located at 4014 Waters End Ln, Snellville GA 30039. A single family home inside Gwinnett County**.(Plaintiff's Exhibit "1", p. 82) Further, the Search Warrant itself identified **"The list of certain property, items, articles, instruments to be searched for and seized are located in GWINNETT COUNTY, GEORGIA and are specifically described as follows: "The residence of James Robertson (DOB: 03.30.2002) located at 4014 Waters End Ln, Snellville GA 30039. A single family home inside Gwinnett County."** (Plaintiff's Exhibit "1", p.86.)

### 24.

As a matter of fact, and law, such statements and allegations failed to particularize the items to be seized in both the Affidavit & Application for a Search Warrant and the Search Warrant and the search warrant on its face did not enable a prudent officer executing the warrant to locate the items definitely and with reasonable certainty. Additionally, Palmer testified at the suppression hearing that investigators from the robbery unit were present during the search and identified and seized the items related to the charges against Plaintiff, which had no relationship to

the "entering automobile or other motor vehicle with intent to commit theft or felony and theft by receiving stolen property" alleged in the affidavit as the crime committed.(Plaintiff's Exhibit "1", pp. 63, ln. 21-64, ln.6.) However, the officers claimed a nexus between the property found during the search relating to the unrelated armed robbery and Defendant being on the premises.

**25.**

In support of the issuance of a search warrant, Detective A.P. Palmer, GCPD Badge Number 1704 swore under oath in the Affidavit & Application For a Search Warrant, certain facts sufficient on their face to establish the existence of probable cause for the offenses listed in the search warrant, none of which were related to Plaintiff. (Plaintiff's Exhibit "1", pp. 83-84.) The last paragraph of the averments set forth "the scope of the search warrant" which statements and allegations did particularize the items to be seized in the Affidavit & Application for a Search Warrant and if included in the Search Warrant   on its face would have enabled a prudent officer executing the warrant to locate the items definitely and with reasonable certainty. (Plaintiff's Exhibit "1", p.84.) However, it is beyond dispute that there was no residual clause, there were no appropriate words of incorporation, and the affidavit did not accompany the search warrant.(Plaintiff's Exhibit "1", pp. 57-64.)

**26.**

Additionally Detective A. P. Palmer did present sworn oral testimony to supplement the averments set forth in the Affidavit, but he did not request a no-knock provision. (Plaintiff's Exhibit "1", pp. 84-85.) However, the State did not introduce at the hearing on the motions the "ORAL TESTIMONY, GIVEN UNDER OATH, RECEIVED AND RECORDED" in order to meet its initial burden of proof, nor did it ever provide it as part of its discovery requirements.(Plaintiff's Exhibit "1", pp. 47-57.)

**27.**

On October 25, 2019, at approximately 08:33:16 am., the Gwinnett County Magistrate Court   issued the search warrant.(Plaintiff's Exhibit "1", 86-88.) Subsequently on October 28, 2019, at 9:00 am said search warrant was executed on the Robertson residence and a Return of search Warrant & Inventory was filed on November 6, 2019.(Plaintiff's Exhibit "1", pp.89-90.)

**28.**

On October 28, 2019, Plaintiff was arrested during the execution of the search warrant at issue herein[3] and charged with the offense of misdemeanor obstruction of law enforcement officer for not exiting the residence as commanded by the SWAT Team. He made bond and to-date there has been no formal accusation or indictment for such allegations, and the applicable statute of limitations has expired. <u>State of Georgia v. Devdan Amir Yearwood-Cabbel</u>, Warrant Number 19W16059, Gwinnett Magistrate Court and Gwinnett County Police Department Incident Report 19-0990404.

**29.**

Plaintiff was arrested on November 21, 2019, and was indicted on January 8, 2020, for the offenses of armed robbery (OCGA §16-8-41), aggravated assault (OCGA § 16-5-21), and possession of a firearm during commission of a felony (OCGA § 16-11-106) (V2-14) arising out of the execution of the search warrant and items seized, and fruits of the poisonous tree from the search warrant.

---

[3] <u>In Re: Search Warrant for 4014 Waters End Lane, Snellville, Gwinnett County, Georgia 30039</u>, Search Warrant Number 19X01539, Docket Number E014865, Gwinnett Magistrate Court.

**30.**

Inasmuch as Plaintiff had been charged with the offenses of armed robbery (OCGA §16-8-41), aggravated assault (OCGA § 16-5-21), and possession of a firearm during commission of a felony (OCGA § 16-11-106)(V2-14), he claimed a possessory interest in and to the seized articles , including but not limited to, all items referred to in the "Return of Search Warrant & Inventory" dated November 5, 2019, and that he had a reasonable expectation of privacy as an overnight guest in the residence.

**31.**

Plaintiff went through a series of four appointed attorneys who filed various discovery motions, non-particularized substantive motions, and amendments thereto. On November 9, 2021, Plaintiff's lead counsel herein was requested by the trial court to take over the defense of the pending indictment. Plaintiff's counsel then obtained the search warrant at issue herein through a request for supplemental discovery and  filed his *Third Amendment to Motion to Suppress Search of 4014 Waters End Lane, Snellville, Gwinnett County, Georgia* on February 21, 2022 , *First Amendment to Motion to Suppress Eyewitness Identification* on February 21, 2022, and *First Amendment to Motion Challenging Voluntariness of Statement* on February 21, 2022, seeking suppression of items seized on October 28, 2019 during the

execution of a search warrant on the basis that "the search and seizure was that of a general search and inquisition, as the warrant itself fails to describe with some degree of specificity the places to be searched and the items to be searched for and seized", and that the resulting photo identification lineup  and in-custody statement were the "fruit of the poisonous tree".

**32.**

All pending motions came on for hearing on May 26-27, 2022, before the Honorable Debra K. Turner, Senior Judge, Georgia Superior Courts who had been designated to hear the case.

**33.**

In response to Plaintiff's claims that any direct or derivative evidence was barred by the doctrine of "fruit of the poisonous tree, the State failed or refused to introduce any evidence on the photo lineup or in-custody statement, and did not identify, mark or tender as an exhibit the photo lineup or Defendant's recorded in-custody statement. (Plaintiff's Exhibit "1" and Plaintiff's Exhibit "2".)

**34.**

The State's failure or refusal to submit any evidence or testimony whatsoever to refute the "fruit of the poisonous tree" in the First *Amendment to Motion to Suppress Eyewitness Identification* and *First Amendment to Motion Challenging*

*Voluntariness of Statement* established beyond dispute that such doctrine was applicable and controlling therein, as the search warrant was defective on its face. (Plaintiff's Exhibit "2" and Plaintiff's Exhibit "3".)

**35.**

After hearing evidence presented, consideration of the four-corners of the search warrant, and argument of counsel, the trial court entered its *Order Denying Defendant's Motion to Suppress*. However, Senior Judge Turner had made an oral finding on the record that Plaintiff had standing as a social guest or invited guest with a reasonable expectation of privacy in the residence.

**36.**

On June 27, 2022, Senior Judge Turner granted a Certificate of Immediate Review in accordance with OCGA § 5-6-34(b), and Plaintiff filed his *Application for Interlocutory Appeal* within ten (10) days of the granting and filing of the *Certificate of Immediate Review*. The case was docketed on June 30, 2022, in the Court of Appeals of Georgia, and the District Attorney's Office of the Gwinnett Judicial Circuit did not file a response. On July 18, 2022, the Court of Appeals entered its Order granting the Plaintiff an interlocutory appeal, and his Notice of Appeal was filed on July 25, 2022.

**37.**

After extensive briefing, the Court of Appeals of Georgia in *Devdan Amir Yearwood-Cabbel v. The State*, Case Number A23A0067, Court of Appeals of Georgia (March 22, 2023)[4] vacated and remanded the suppression order for clarification "whether the trial court denied Cabbel's motion to suppress on the basis of lack of standing or on the merits."

**38.**

The trial court after consideration of the parties filings related to the issues upon remand and after giving the parties a full and fair opportunity to all parties to litigate the issues, the trial court on May 11, 2023, entered *sua sponte* its *Order Granting Amendment to Motion to Suppress Search of 4014, Waters End Lane, Snellville, Gwinnett County, Georgia* finding as a matter of fact and law *inter alia* that the Plaintiff had standing and an expectation of privacy in the searched premises, the search warrant was improper on its face, and the failure to tender the "oral testimony" given in support of the search warrant was fatal. Plaintiff by way of further allegation and averment invokes the incorporation-by-reference doctrine and attaches hereto and incorporates herein a copy of the *Order Granting Third*

---

[4] "Not To Be Officially Reported" pursuant to Rule 34 of the Rules of the Court of Appeals of Georgia.

*Amendment to Motion to Suppress Search of 4014 Waters End Lane, Snellville,*
*Gwinnett County, Georgia* filed on May 11, 2023, in <u>State of Georgia v. Devdan</u>
<u>Amir Yearwood-Cabbel</u>, Indictment Number 20-B-00092-2, Gwinnett Superior
Court as Plaintiff's Exhibit Number "6".

**39.**

The State of Georgia filed its Notice of Appeal and Certification to Trial Court
Under OCGA § 5-7-1(a)(4) on June 9, 2023.

**40.**

On June 28, 2023, the trial court, over the meritless objections of the State,
entered its Order Granting Application for Bond Pending Appeal by State, which
resulted in the release from pretrial detention commencing November 21, 2019, to
June 28, 2023, or total of 1,316 days. However, the Plaintiff was required to wear
and pay for an ankle monitor for the period of June 28, 2023, to April 8, 2024, or a
total of 286 days.

**41.**

After extensive briefing and oral argument, the Court of Appeals of Georgia
in *The State v. Yearwood-Cabbel*, 370 Ga. App. 471(2024) affirmed *in toto* the trial

court's *Order Granting Amendment to Motion to Suppress Search of 4014, Waters End Lane, Snellville, Gwinnett County, Georgia.* [5]

**42.**

On February 21, 2024, the trial court entered its *Judgment on Remittitur* rendering the opinion and remittitur of the Court of Appeals as the judgment of the trial. court. Plaintiff by way of further allegation and averment invokes the incorporation-by-reference doctrine and attaches hereto and incorporates herein a copy of the Judgment on Remittitur filed on February 21, 2024, in State of Georgia v. Devdan Amir Yearwood-Cabbel, Indictment Number 20-B-00092-2, Gwinnett Superior Court as Plaintiff's Exhibit Number "7".

**43.**

On April 12, 2024, the trial court, upon the request of the State of Georgia, entered its *Order for Nolle Prosequi* as to counts 8, 9, and 10 of the indictment, and there has been no further action.(Plaintiff's Exhibit "4".)

---

[5] Prior to the date of the opinion in this case, the State of Georgia had in the former direct appeal by Plaintiff and in its direct appeal here abandoned all pretense as to the particularity defects of the search warrant "tacitly admitted (and does so more directly here its case rises or falls on the issue of Appellant's standing to challenge a search of the home of his friend's mother." Case Number A23A00067, Response to Motion Supplemental[sic], pp.2-3, and Case Number A23A1728, Brief of Appellee, pp. 5-7, ln 1-22).

## COUNT ONE

**Fourth Amendment Under 42 U.S.C. § 1983**
**Art. 1, § 1, ¶ 13 of Georgia Constitution Under 42 U.S.C. § 1983**
**OCGA § 17-5-20- OCGA § 17-5-32**
**Unlawful Search and Seizure**
**Malicious Prosecution Under 42 USC § 1983 and OCGA § 51-7-40 through**
**OCGA § 51-7-47.**

**44.**

Each and every allegation and statement set forth in Paragraphs "1" through "43" of this Complaint is hereby repeated, reiterated, and realleged with the same force and effect and incorporated by reference as if fully set forth herein at length and detail. Further that all times relevant hereto, Defendants acted under color of law, and the actions and/or inactions described herein violated the rights of Plaintiff to be free from unlawful searches and seizures as guaranteed by the Fourth Amendment of the United States, Art. I, § 1, ¶ 13 of the Constitution of Georgia, and OCGA § 17-5-20 through OCGA § 17-5-32. At all times relevant herein, there was a lack of probable cause to arrest and prosecute Plaintiff.

**45.**

On November 21, 2019, as a direct result of the facially invalid search warrant and a tainted photographic identification lineup on November 7, 2019, Plaintiff was

seized, arrested, and incarcerated in the common jail of Gwinnett County for 1,316 days.

**46.**

The seizure of Plaintiff, arrest warrants, arrest of Plaintiff, and subsequent in-custody interview on November 21, 2019, all arose from the tainted evidence of the illegal search. These issues of the facial invalidity of the search warrant and "fruit of the poisonous tree" were all determined in Plaintiff's favor in both the original criminal case and subsequent appellate decisions.

**47.**

Defendants are prohibited by the doctrines of res judicata and collateral estoppel from relitigating such issues, inasmuch as the underlying criminal case provided a full and fair opportunity to all parties to litigate the issues as determined by the Gwinnett Superior Court and Court of Appeals of Georgia.

**48.**

Plaintiff's criminal prosecution terminated Plaintiff's favor by virtue of a *nolle prosequi* and dismissal entered on April 12, 2024.

**49.**

The plaintiff was seized following the initiation of legal process in the form of arrest warrants obtained on November 7, 2019, and/or an indictment issued on January 8, 2020.

**50.**

Defendants are not entitled to official immunity under Georgia law because they knowingly contrary to binding and well-established authority such as *Groh v. Ramirez et al.*, 540 U.S. 551, 563-565 (2004), *Battle v. The State*, 275 Ga. App. 301 (2005), and *Bryant v. The State*, 301 Ga. App. 617, 619-620(2) (2017), inasmuch as the search warrant was so facially deficient-*i.e.*, in failing to particularize the place or things to be seized-that the executing officers cannot reasonably presume it to be valid. *United States v. Leon*, 468 U.S. 897, 923(1984). This is such a case.

**51.**

As a result of Defendants' actions and/or inactions which resulted in Plaintiff's incarceration and prosecution, Plaintiff has suffered the following damages: deprivation of freedom and liberty from November 21, 2019 to June 28, 2023, or a total of 1,316 days while he was incarcerated in the common jail of Gwinnett County without bond; deprivation of freedom and liberty from June 28, 2023 to April 8,

2024, or total of 286 days while he was required to wear and pay for an ankle monitor; past and future mental and emotional distress as plaintiff was made to suffer great mental anguish, humiliation, and disgrace as a result of his prosecution and lengthy incarceration; past and future pain and suffering; and other damages.

**52.**

Defendants' actions were the but for and proximate cause of the following damages to Plaintiff, among others: loss of freedom for 1,316 days, humiliation, fear, anxiety, terror, and significant abuse suffered while incarcerated in the common jail of Gwinnett County.

**53.**

Defendants' wrongful incarceration put Plaintiff at greater risk of COVID-19 in the jail setting.

**COUNT TWO**

**Improper Training and Supervision Under 42 USC § 1983 and Georgia Law**

**54.**

(a) Each and every allegation and statement set forth in Paragraphs "1" through "53" of this Complaint is hereby repeated, reiterated, and realleged with

the same force and effect and incorporated by reference as if fully set forth herein at length and detail.

(b)  At all relevant times hereto, Defendants Detective A.P. Palmer, Detective J.M. Boyd, and Investigator S.R. Donahue were acting in accordance with and pursuant to the unconstitutional policies, customs, patterns, and/or practices established by Defendant Gwinnett County and Defendant A.A. "Butch" Ayers, the former Chief of police who had final decision-making authority with regard to performance of Defendant Gwinnett County's police functions, including but not limited to the hiring, training, supervision, and discipline of police officers employed by Gwinnett County Police Department. (a) Contrary to binding and well-established authority such as Groh *v. Ramirez et al.*, 540 U.S. 551, 563-565 (2004), *Battle v. The State*, 275 Ga. App. 301 (2005), and *Bryant v. The State*, 301 Ga. App. 617, 619-620(2) (2017) Defendants Palmer, Boyd, and Donahue were acting in accordance with and pursuant to the unconstitutional policies, customs, patterns, and/or practices established by Defendant Gwinnett County and Defendant A.A. "Butch" Ayers, the former Chief of police who had final decision-making authority with regard to performance of Defendant Gwinnett County's police functions, including but not limited to the hiring, training, supervision, and discipline of police officers employed by Gwinnett County Police Department. None of the Defendants

are entitled to qualified immunity and any assertion thereof should result in sanctions against the offending party and their attorney.

(c) On May 27, 2022, Detective A.P. Palmer appeared and testified under oath at motions hearing in <u>State of Georgia v. Devdan Amir Yearwood-Cabbel</u>, Indictment Number 20-B-00092-2, Gwinnett Superior Court and specifically testified as to his training and supervision relating as follows:

"Q The scope of the search warrant is what's set forth in the search warrant; correct, Corporal Palmer?

**A I've always been trained to list the residence in that portion and then list the scope of what we are actually looking for in the narrative of the search warrant.** (Emphasis supplied.)

Q There's nothing in the search warrant that incorporates that. There's no scope of the search warrant other than the residence of James Robertson, D.O.B. 3-30-2022[sic], located at 4014 Waters End Lane, Snellville, Georgia 30039, a single residence—excuse me, a single-family home inside Gwinnett County; correct?

A Correct.

Q There's nothing else in that search warrant that tells you what to search for; correct?

A That's correct." (Plaintiff's Exhibit "1", p. 61, ln. 10-24.)

Defendants Palmer, Boyd, and Donahue were acting in accordance with and pursuant to the unconstitutional policies, customs, patterns, and/or practices established by Defendant Gwinnett County and Defendant A.A. "Butch" Ayers, the former Chief of police who had final decision-making authority with regard to performance of Defendant Gwinnett County's police functions, including but not limited to the hiring, training, supervision, and discipline of police officers employed by Gwinnett County Police Department. None of the Defendants are entitled to qualified immunity and any assertion thereof should result in sanctions against the offending party and their attorney.

## COUNT THREE

## Punitive Damages Under Federal and Georgia Law

## 55.

Each and every allegation and statement set forth in Paragraphs "1" through "54" of this Complaint is hereby repeated, reiterated, and realleged with the same force and effect and incorporated by reference as if fully set forth herein at length and detail.

**56.**

By engaging in the above-described conduct, Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of conscious indifference to consequences so as to entitle Plaintiff to punitive damages in accordance with OCGA § 51-12-5.1 and 42 USC § 1983.

**COUNT FOUR**

**Attorney's Fees Under 42 USC § 1983 and Applicable Georgia Statutes Governing Attorneys' Fees**

**57.**

Each and every allegation and statement set forth in Paragraphs "1" through "56" of this Complaint is hereby repeated, reiterated, and realleged with the same force and effect and incorporated by reference as if fully set forth herein at length and detail.

**58.**

The actions and/or inactions of the Defendants and by engaging in the above-described conduct entitles Plaintiff to recover attorneys' fees, costs, and expenses, pursuant to 42 U.S.C. § 1988 and all Georgia statutes governing the award of attorneys' fees, costs, and expenses.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE**,** Plaintiff, **DEVDAN AMIR YEARWOOD-CABBEL**,

requests the following relief:

    A. Trial by jury on all issues.

    B. Compensatory damages, in an amount to be ascertained at trial.

    C. Punitive damages, in an amount to be ascertained at trial, for Defendants'

       intentional and/or willful and wanton conduct described herein.

    D. Attorneys' fees, cost, and expenses, pursuant to 42 U.S.C. § 1988 and all

       applicable Georgia statutes.

    E. Such other and further relief as this Court may deem necessary, just, and

       proper.

               **CHANDLER, BRITT & JAY, LLC**
               **Attorneys for Plaintiff**

               **/s/Walt M. Britt**
               **WALT M. BRITT**
               **Georgia Bar Number 083237**
               **P. O. Box 1749**
               **Buford, Georgia 30515**
               **(770) 271-2991**
               **(770) 271-2986 (fax)**
               **wbritt@cbjblawfirm.com**

# PLAINTIFF'S EXHIBIT NUMBER "1"

## Certified Transcript of Motions Hearing May 27, 2022(Volume 2 of 2)

## State of Georgia v. Devdan Amir Yearwood, Indictment Number 20-B-00092-2

E-FILED IN OFFICE - EW
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
20-B-00092-2
6/28/2022 3:51 PM
TIANA P. GARNER, CLERK

```
1              IN THE SUPERIOR COURT OF GWINNETT COUNTY
                          STATE OF GEORGIA
2

3    STATE OF GEORGIA           )
                                )    Criminal File
4          vs.                  )    No. 20-B-00092-2
                                )
5    DEVDAN AMIR YEARWOOD-CABBEL, )   VOLUME 2 of 2
                                )
6          Defendant.           )        CERTIFIED TRANSCRIPT

7    ──────────────────────────────────────────────────────

8                        MOTIONS HEARING

9                         May 27, 2022

     ──────────────────────────────────────────────────────
10
         THE HONORABLE DEBRA K. TURNER, SENIOR JUDGE,
11           SITTING BY DESIGNATION, PRESIDING

12         Gwinnett Justice & Administration Center
                       75 Langley Drive
13             Lawrenceville, Georgia 30046

14

15                                   Chandler, Britt & Jay, LLC

16                                        JUN 2 8 2022

17                                        RECEIVED

18   APPEARANCES OF COUNSEL:

19   On Behalf of the State:      Meighan Vargas
                                  Assistant District Attorney
20
     On Behalf of the Defendant: Walt M. Britt
21                                Attorney at Law

22   ──────────────────────────────────────────────────────

23   Jeanine M. Ritter, Official Court Reporter
     Gwinnett County Superior Court
     75 Langley Drive
24   Lawrenceville, GA 30046
     (770) 822-8797
25   jeanine.ritter@gwinnettcounty.com

                                                        41
```

1
## INDEX TO EXAMINATIONS

2
WITNESS                                                           PAGE

3
### Volume 1 - May 26, 2022

4
DEVDAN YEARWOOD-CABBELL
     Direct Examination by Mr. Britt...................    6
5
     Cross-Examination by Ms. Vargas...................    9
     Redirect Examination by Mr. Britt.................   14
6
     Recross Examination by Ms. Vargas.................   18
     Further Redirect Examination by Mr. Britt.........   20
7
     Further Recross Examination by Ms. Vargas.........   21
     Further Redirect Examination by Mr. Britt.........   25

8
### Volume 2 - May 27, 2022

9
OFFICER A. PALMER
10
     Direct Examination by Ms. Vargas..................   47
     Cross-examination by Mr. Britt....................   57
11

12

13
## INDEX TO EXHIBITS

14
STATE'S
EXHIBIT              DESCRIPTION           TENDER/ADMIT  PAGE
15
No. 1    Affidavit & Application for          45         82
16
          Search Warrant 19X01539
No. 2    Search Warrant 19X01539             45         86
17
No. 3    Return of Search Warrant & Inventory 45         89

18

19
## TRANSCRIPT LEGEND

20
     [ph]    Phonetically spelled; no verifiable spelling
     [sic]   Word or phrase that appears to be an error
21
             but is exactly as spoken

22
     -- (Dashes) Unintentional or purposeful interruption

23
     The following may contain quoted material. Such
material is reproduced as read or spoken.
24

     "Uh-huh" is used to indicate an affirmative response;
25
"uh-uh" is used to indicate a negative response.

                                                        42

1                    P R O C E E D I N G S

2          (10:01 a.m., in open court.)

3          THE COURT:  Okay.  If you want to get him out, that's

4    great.

5          (Defendant produced from custody by the sheriff's

6    deputy.)

7          THE COURT:  Okay.  And before we get started, if I

8    could -- well, I want to ask two things.  I don't really

9    care.  We have the whole day.  But give me an honest

10   estimate.  Two hours?  Four hours?  Eight hours?

11         MR. BRITT:  I think two hours.

12         THE COURT:  You think how many?

13         MR. BRITT:  Two.

14         THE COURT:  That's what I thought you said.

15         MS. VARGAS:  I mean, I would think less than that,

16   but we'll see how --

17         MR. BRITT:  I'm saying tops, two.

18         THE COURT:  Okay.  Perfect.  And my second.  This is

19   a favor, if you would, if I could get -- I looked through

20   the file.  There are a bazillion motions and amendments to

21   the motions, and I'm not a hundred percent sure that the

22   clerk's file has everything in it.

23         So if I could just get brief opening statements

24   outlining exactly what it is we're hearing today.  You

25   don't have to go into evidence.  I'll hear that in your

                                                      43

1  arguments and from the witness stand, but if I could just

2  get a brief outline, that would be great.

3      MR. BRITT:  Judge, I have tried to consolidate.  As I

4  said, I'm numerous lawyers in.  And I was -- Ms. Vargas

5  provided me with the search warrant on the understanding I

6  would update the motions and consolidate everything.

7      So we have filed an amendment to the motion to

8  suppress of the search of the home, which is search

9  warrant number 19X01539.

10     The thrust of that is -- and I've explained this to

11 Ms. Vargas so she understands where we're going -- is that

12 the warrant is not particularized and does not, with

13 specifics, allege what is part and parcel and what is to

14 be searched.

15     We contend that the search warrant is improper,

16 illegal, and everything has to be suppressed.  As part of

17 that, we contend that the photo ID that resulted from his

18 being there at the time and his seizure at the time led to

19 them taking a photo ID lineup with his picture in it to a

20 victim, and that is fruits of the poisonous tree, because

21 there was nothing else that transpired other than the

22 search, that, and that.

23     Then, as the Court knows, he was subsequently

24 arrested a month later.  No other investigation really as

25 to him.  And then we contend that the statement, the video

44

1    statement, should be ruled out as fruits of the poisonous

2    tree.

3        And I believe that's where we are; correct,

4    Ms. Vargas?

5        MS. VARGAS:  Yes.

6        THE COURT:  Okay.  So I'm ready when y'all are.

7        MR. BRITT:  And we would again invoke the Rule or the

8    Rule is still invoked.

9        Which one are you going to call first?

10       (Off-the-record discussion between counsel.)

11       MS. VARGAS:  Your Honor, the State is going to move

12   to tender, if there's no objection from the defense,

13   what's marked as State's Exhibits 1, 2 and 3.  Those are

14   respectively the affidavit and application for the search

15   warrant, which is 1; the search warrant itself, which is

16   2; and the return, which is 3.

17       And just for purposes of the record, I discussed this

18   with Mr. Britt yesterday.  We have the certified copies.

19   But to admit, it's copies of the certified copies, and

20   it's my understanding that Mr. Britt does not have any

21   objection.

22       MR. BRITT:  She's provided me with a copy of the

23   certified copy.  I attached that to my motion, so there's

24   no problem with that.

25       THE COURT:  1, 2 and 3 are admitted without

                                                        45

1      objection.

2            MS. VARGAS:  Thank you, Judge.

3            Your Honor, I do obviously have the officer who took

4      out this warrant, who sought and took out the warrant.  He

5      is one of the witnesses that stepped outside, so we will

6      call him first.

7            But in truth, Judge, the warrant is a

8      self-authenticating document as well, and so looking at

9      the document -- if I can approach.

10           THE COURT:  Sure.

11           MS. VARGAS:  I'll present them to you.

12           THE COURT:  Thank you.

13           MS. VARGAS:  And, Judge, as the Court is aware, the

14     burden here to invalidate the search warrant is fairly

15     high.  There's significant favor -- significant deference

16     is to be given to the magistrate's finding of probable

17     cause.  And also, Your Honor, obviously, it's the State's

18     position that the search warrant is valid.  But given the

19     case law -- or and given the case law, the amount of

20     deference to be shown to the magistrate and their decision

21     and finding is significant.

22           Additionally, there's also clear case law indicating

23     that even in "doubtful instances," which I don't think

24     this one is, but even in "doubtful instances" regarding

25     probable cause, it's to be resolved in favor of the

                                                        46

1    warrant being valid.

2         So at this time the State is going to call our

3    officer, Officer Palmer.

4         Good morning.  Let you get situated.

5         THE WITNESS:  Yes.

6         MS. VARGAS:  If you would, please raise your right

7    hand.

8                   OFFICER A. PALMER,

9    called as a witness, having been duly sworn, was examined and

10   testified as follows:

11                  DIRECT EXAMINATION

12   BY MS. VARGAS:

13   Q    And if you would, please state your name for the

14   record.

15   A    Officer Palmer with the Gwinnett County Police

16   Department.

17   Q    Okay.  Officer Palmer, how are you employed with

18   Gwinnett County?

19   A    As a patrol officer.

20   Q    Okay.  And you are aware that we are here today with

21   regard to the State versus Devdan Yearwood-Cabbell.  How are

22   you involved in that case?

23   A    Well, I was a detective working in general crimes

24   unit.  I was assigned a series of entering autos that occurred

25   back in 2019.  And my investigation led me to making multiple

                                                              47

1    arrests on two suspects and a search warrant at one of the

2    suspect's residences where Mr. -- where the defendant was

3    there.

4       Q    Okay.  So you mentioned the search warrant.

5            MS. VARGAS:  Your Honor, may I approach and --

6            THE COURT:  Sure.  Do you want the whole packet?

7            MS. VARGAS:  Yes, if I may.

8            THE COURT:  Sure.

9            MS. VARGAS:  May I approach the witness?

10           THE COURT:  Yes, ma'am.

11           MS. VARGAS:  Thank you.

12   BY MS. VARGAS:

13      Q    Okay.  You mentioned a search warrant.  I am showing

14   you what is marked as State's Exhibits 1, 2 and 3.  They've

15   already been admitted without objection, if you can take a

16   look.  Do you recognize these?

17      A    Yes, I do.

18      Q    Okay.  So Exhibit 1 is the affidavit and application

19   that you submitted for the search warrant; correct?

20      A    That is correct.

21      Q    Is that affidavit in writing?

22      A    Yes.

23      Q    Are you a certified peace officer?

24      A    Yes.

25      Q    And you were the affiant?

48

1    A    Yes.

2    Q    And you made the affidavit under oath or affirmation?

3    A    Yes, I did.

4    Q    And did you -- will you discuss the nature of the

5    search that you were seeking?

6    A    The original investigation for the entering autos,

7    one of the suspects was arrested that day.  And after a

8    series --

9    Q    Who?

10    A    His name is Jacobi Chomicki.

11    Q    Okay.

12    A    He was arrested because he shot at a homeowner after

13    trying to steal a bike to flee from uniform officers who were

14    in the neighborhood at that time.

15        And during the investigation and interviewing

16    Mr. Chomicki, he stated there was another male that was with

17    him in the minivan, that the minivan was ditched after uniform

18    patrol attempted to make contact with them after multiple calls

19    came in for entering autos in the neighborhood.

20    Q    Okay.  The minivan that you're referencing, was that

21    minivan somehow involved in the crimes that you're referring

22    to?

23    A    Yes.  The minivan was registered to James Robertson's

24    mother.

25    Q    Okay.

49

1      A      Which we got a search warrant for the minivan and

2  found shell casings inside the minivan for rifle rounds.

3              During the interview with Jacobi Chomicki, he stated

4  that -- he didn't mention the other person's name, but jail

5  phone calls, he stated James Robertson's name as the person

6  that we mentioned in the initial interview.

7      Q      And was he indicating that Mr. Robertson was present

8  during the crimes with which he was charged, with which

9  Chomicki was charged?

10     A      Yes, for the entering autos.

11     Q      Okay.

12     A      He then stated that Mr. Robertson ran from police,

13  from the minivan because he was also in possession of a stolen

14  firearm.

15              Mr. Chomicki stated that he stayed at Mr. Robertson's

16  house the night before the entering autos occurred in

17  possession of the stolen firearm, and that was the -- and there

18  were multiple items taken from the vehicles for the entering

19  autos and which was the scope of the search warrant for the

20  residence, to find personal belongings of the victims of the

21  entering autos and the other stolen firearm.

22     Q      And the residence listed, you indicated that

23  Mr. Chomicki, either in his interview or in jail calls or both,

24  stated -- named Mr. Robertson as the other party and also

25  stated that he, Chomicki, had stayed at Robertson's residence

                                                              50

1    the night before; is that correct?

2        A    That's correct.

3        Q    Okay.  And what was the address of that residence?

4        A    14 -- I'm sorry.  4014 Waters End Lane in Snellville,

5    Georgia, 30039.

6        Q    Is that the location for which you sought the search

7    warrant?

8        A    Yes.

9        Q    Okay.  And did you simultaneously submit this

10   affidavit to a magistrate judge in Gwinnett County?

11       A    Yes, I did.

12       Q    Okay.  And after that, the warrant was issued;

13   correct?  And that is State's Exhibit 2.

14       A    Yes.

15       Q    Is that right?

16       A    Yes.

17       Q    Okay.  I will -- briefly returning to the affidavit.

18   On the first page of the affidavit, where it indicates the list

19   of certain property items, articles, et cetera to be searched,

20   what do you have listed there?

21       A    The residence of James Robertson, date of birth,

22   03-30-2002, located at 4014 Waters End Lane, Snellville,

23   Georgia, 30039, a single-family home inside Gwinnett County.

24       Q    Okay.  And within the affidavit, in addition to

25   detailing the -- what you told us about Mr. Chomicki, his

51

1    arrest, his identification of Mr. Robertson, his statement of

2    having spent the night at Mr. Robertson's house and of

3    Mr. Robertson having participated in these crimes, you also

4    list the last paragraph of the affidavit. Can you tell us what

5    that says?

6        A    Would you like me to read the entire paragraph?

7        Q    Sure.

8        A    All right. I request the scope of the search warrant

9    include the following: the gun taken referenced in case number

10   19-095881, which is believed to be a Smith & Wesson Bodyguard,

11   serial number KCC4623, a .380 caliber handgun with a Crimson

12   Trace red laser system. This includes parts and pieces

13   thereof, and accessories which include, but not limited to,

14   holsters and magazines. Also, I request the scope include

15   ammunition, ammunition boxes, shell casings, projectiles,

16   fragments, gun cases, and receipts for the purchase of the

17   firearm.

18            I also request the scope include the orange Nike

19   sandals from case number 19-084578. I request the scope

20   include the camera equipment, bag, shoes, and clothing taken

21   from case number 19-095881. I request the scope include the

22   black Nautica wallet, the victim's financial transaction cards,

23   driver's license, and social security card from case number

24   19-095796.

25        Q    Okay. And these items that are listed in relation to

                                                                52

1    these various police department case numbers, are those the

2    items that were -- that the victims of those entering autos had

3    indicated had been stolen from their -- from their cars?

4        A    Yes.

5        Q    Okay.  And on the -- I'm going to return your focus

6    to the first page again.  You also -- there's a series of boxes

7    that you can check; right?

8        A    Yes.

9        Q    And so you are also indicating that you are looking

10   for items that have been used in the commission of a crime

11   therein described, meaning those crimes that you described in

12   the affidavit, the entering autos with Mr. Chomicki and

13   Mr. Robertson; is that correct?

14       A    Yes.

15       Q    Stolen property?

16       A    Yes.

17       Q    Contraband, the possession of which is unlawful?

18       A    Yes.

19       Q    Tangible, corporeal or visible evidence of the

20   commission of the crimes set forth?

21       A    Yes.

22       Q    And intangible, incorporeal, or invisible evidence of

23   the commission of the crimes set forth?

24       A    Yes.

25       Q    And you met with a magistrate.  Can you look at the

                                                                    53

1    signature page, please, and tell me what date and time you

2    signed this?

3         A    I signed this October 25, 2019, at 08:32 a.m.

4         Q    Okay.  And can you look at the following signature

5    box and say what magistrate signed it and what date and time?

6         A    Judge William Brogdon signed it on October 25, 2019

7    at 08:33 in the morning.

8         Q    Okay.  And just above your signature block, there is

9    one sentence.  Can you read that sentence, please?

10        A    I swear or affirm that all the information contained

11   in this affidavit and all other testimony given by me is true

12   and correct to the best of my knowledge and belief.

13        Q    Okay.  And when you sought this warrant, did you have

14   a discussion with the magistrate about what you were seeking?

15        A    Yes.

16        Q    Okay.  And is your understanding that after the

17   magistrate --

18             MR. BRITT:  Judge, he can't testify about what

19        understandings are.  He can testify -- we're talking about

20        the four corners of the warrant and that's all.

21             MS. VARGAS:  I'll rephrase.

22             THE COURT:  Rephrase.

23             MS. VARGAS:  Yes.

24   BY MS. VARGAS:

25        Q    Was the warrant thereafter signed?

                                                              54

1       A    Yes.

2       Q    Okay.  And in your training and experience -- well,

3   I'll leave it alone.

4           Then I will direct you, then, to State's 3, which

5   you've got up there as well.  And that is the return of the

6   warrant and the inventory.  Can you tell us what you located?

7       A    Yes.  Five black cell phones, one pink cell phone,

8   one silver cell phone, one Smith & Wesson handgun which is .40

9   caliber, one Glock magazine, one .380 caliber magazine, 11 .40

10  caliber rounds of ammunition, 14 counterfeit $100 bills, eight

11  credit/debit cards, one insurance card, two social security

12  cards, two South Gwinnett student IDs, two brass knuckles, one

13  Glock knife, two handgun holsters, one wallet, and two white

14  pills.

15      Q    Okay.  And was a copy of the warrant, along with the

16  receipt of the property seized, left?

17      A    Yes.

18      Q    And who did you leave that with?

19      A    It was left inside the residence.  I don't remember a

20  specific person.

21      Q    Okay.  And when did you submit this return?

22      A    I submitted the return on -- where is the date --

23  November 5, 2019, at 1:55 p.m.

24      Q    Okay.  And there is your signature on this; is that

25  correct?

                                                              55

1    A    Yes, that's correct.

2    Q    Okay.  And just above your signature, can you read

3    that line, please.

4    A    I swear that -- I swear that is a true and detailed

5    account of the listed person or persons, property, items,

6    articles, and instruments seized by me at the execution of this

7    search warrant.

8    Q    Okay.  Now, during the execution of the search

9    warrant at this location, did you encounter Mr. -- this

10    defendant?

11    A    Yes, I did.

12    Q    Okay.  And when you encountered him, can you tell us

13    how you encountered him at the execution of the search warrant?

14    A    Yes.  So based on criminal history from Jacobi

15    Chomicki and James Robertson, I had to complete a SWAT matrix,

16    which had SWAT serve the search warrant due to number of points

17    above, requiring SWAT to be there.

18        The defendant was the last person out of the

19    residence after SWAT officers had to shoot gas rounds into the

20    window to try and get him out, I believe.  But SWAT officers

21    were the first to encounter the defendant.

22    Q    And once he was encountered, after that, during your

23    investigation, was he then identified?

24    A    Yes, he was.

25    Q    Okay.  And was he then arrested?

                                                            56

1    A    Yes, he was.

2         MS. VARGAS:  Okay.

3                        CROSS-EXAMINATION

4    BY MR. BRITT:

5    Q    Good morning, Corporal Palmer.  In State's Exhibit

6    No. 1, the middle of the page there where it says the list of

7    certain property items, do you see where I'm talking about?

8    A    Yes.

9    Q    Would you read that total sentence to me.  So the

10   black and what you inserted there in the little box.

11   A    The list of certain property, items, articles,

12   instruments, to be searched for and seized are located in

13   Gwinnett County, Georgia, are specifically described as

14   follows.  And I wrote:  The residence of James Robertson,

15   D.O.B. 03-30-2002, located at 4014 Waters End Lane, Snellville,

16   Georgia, 30039, a single-family home inside Gwinnett County.

17   Q    All right.  And in the paragraph that you read that

18   is on page three where you said I request the scope of the

19   warrant?

20   A    Yes.

21   Q    All right.  There's no language in that little box on

22   the first that incorporates that in, is that correct, that

23   listing in; correct?

24   A    No.

25   Q    All right.  And you gave oral testimony given under

                                                            57

1    oath which was received and recorded; correct?

2        A    Yes.

3        Q    All right.  Now, insofar as the search warrant goes,

4    on the first page of the search warrant, would you read

5    about -- partway down where it says the offenses of entering

6    auto and all, but then the next paragraph starts the list of

7    certain property.  Would you read that for me?

8            THE COURT:  Can I interrupt a minute?  Do we have

9        another copy of the warrant?  He's got mine.

10           MR. BRITT:  I can give you my copy of the motion and

11       it's got it attached to it.

12           THE COURT:  Okay.  Well, I've got the motion.  So I'm

13       sorry.  I'll go through it.  That's fine.  That's fine.

14       Thank you.

15           MR. BRITT:  I'll wait for you to get it.  It's the

16       amended motion, the last one that was filed.

17           THE COURT:  The third amendment?

18           MR. BRITT:  Yes, ma'am.

19           THE COURT:  I've got it.  Thank you.  I'm sorry.

20           MR. BRITT:  And it has all of the -- it has the

21       application, the search warrant, and the return.

22           THE COURT:  I've got it.  I'm right there.  Thank

23       you.

24           MR. BRITT:  Okay.

25           THE COURT:  Okay.

                                                              58

BY MR. BRITT:

Q     And then right below there where it says theft by receiving stolen property, where it starts with the list of certain property, would you read that to me, please.  Read that into the record.

A     The list of certain property, items, articles, instruments to be searched for and seized are located in Gwinnett County, Georgia, and are specifically described as follows:  The residence of James Robertson, D.O.B. 03-30-2002, located at 4014 Waters End Lane, Snellville, Georgia 30039, a single-family home inside Gwinnett County.

Q     All right.  And nothing in that paragraph, in that part of the search warrant, incorporates the listing that's set forth on the third page of your search warrant application; correct?

A     That is correct.

Q     All right.  Now, if you would go down to the bottom of the first page of the search warrant, the last paragraph, which starts:  You are hereby commanded.  Do you see where I'm talking about?

A     Yes, sir.

Q     Would you read that for me.

A     You are hereby commanded to immediately search the above-described premises/persons for the above-listed or specifically described persons, property, items, articles,

59

1    instruments and making the search at any time of the day or

2    night and if any of the above-listed persons, property, items,

3    articles, and instruments can be --

4         Q     Go.

5         A     -- found, to seize them.

6         Q     All right.  And what else does it tell you to do?

7         A     You shall leave a copy of this warrant and a receipt

8    listing any persons, property, items, articles, and instruments

9    seized, a written inventory signed under oath by the officer

10   executing the search warrant listing the persons, property,

11   items, articles, and instruments seized shall be prepared

12   without unnecessary delay and shall be returned to me or to any

13   judicial officer of this court.

14        Q     All right.  And nothing in that portion of the search

15   warrant refers to or incorporates in any manner whatsoever the

16   information where you say, I requested the scope of the search

17   warrant, which is on page three of the search warrant

18   application; correct?

19        A     That is correct.

20        Q     All right.  And, in fact, nowhere in the search

21   warrant is that information that you referred to in the

22   application incorporated or referred to in the search warrant

23   whatsoever; correct?

24        A     That's correct.

25        Q     All right.  So the command of the search warrant was

                                                                    60

1    to you to search the above-described premises, persons for the

2    list of specifically described persons, property, items,

3    articles, instruments in making the search; correct?

4        A    It was the property.

5        Q    Okay.  But it doesn't -- but you don't list and the

6    search warrant doesn't list any items, articles, or instruments

7    to be searched for, does it?

8        A    Well, we were searching the entire residence for what

9    was in the scope of the search warrant.

10       Q    The scope of the search warrant is what's set forth

11   in the search warrant; correct, Corporal Palmer?

12       A    I've always been trained to list the residence in

13   that portion and then list the scope of what we are actually

14   looking for in the narrative of the search warrant.

15       Q    There's nothing in the search warrant that

16   incorporates that.  There's no scope of the search warrant

17   other than the residence of James Robertson, D.O.B. 3-30-2022

18   [sic], located at 4014 Waters End Lane, Snellville, Georgia

19   30039, a single residence -- excuse me, a single-family home

20   inside Gwinnett County; correct?

21       A    Correct.

22       Q    There's nothing else in that search warrant that

23   tells you what to search for; correct?

24       A    That's correct.

25       Q    All right.  Now let's look at State's Exhibit No. 3.

                                                          61

1    It says that -- and also, in the command of the search warrant,

2    it told you to leave a copy of the search warrant; correct?

3         A    Yes.

4         Q    All right.  And here it says that on October 28,

5    2019, at 9 a.m., I searched the premises particularly described

6    in the search warrant for the specifically listed persons,

7    property, items, articles, instruments; correct?

8         A    Yes.

9         Q    All right.  Read me the next two lines.

10        A    I left a copy of the warrant, together with the

11   receipt of the seized persons, property, items, articles,

12   instruments with the following person:  James Robertson's

13   uncle.

14        Q    Okay.  You did not leave a copy of the affidavit for

15   the search warrant with the search warrant; correct?  You just

16   left the search warrant and the inventory.  You did not leave

17   State's Exhibit --

18        A    I don't recall.  I don't recall.

19        Q    You don't recall?

20        A    No, sir.

21        Q    All right.  That would be something -- you wouldn't

22   have sworn to:  I left a copy of the warrant.  You would have

23   put:  I left a copy of the warrant, together with the search

24   warrant affidavit; correct?

25        A    Again, I don't recall if a copy was left at the

                                                                62

1    scene.

2        Q    Okay.  But you did -- but you swore under oath, you

3    raised your right hand in front of the judge, and you swore:  I

4    left a copy of the warrant, together with the receipt of the

5    seized persons, property, items, articles and instruments,

6    correct?

7        A    Yes.

8        Q    And as you're sitting here today, that's all you know

9    you left; correct?

10       A    Yes.

11       Q    All right.  Did you leave a copy -- a copy of a DVD,

12   a transcript, or anything of the oral testimony that you

13   provided to the magistrate?

14       A    No, I don't have a copy of that.

15       Q    All right.  Now, of the items seized here that you

16   had gone through, which ones were specifically identified with

17   the cases that you listed in your -- where you listed your case

18   numbers and things such as that, the last paragraph of the

19   affidavit of the search warrant?

20       A    I don't recall off the top of my head.

21       Q    Okay.  But there were other items you seized that

22   were not contained within that; correct?

23       A    That is correct.

24       Q    All right.  And that would be specifically the items

25   that are being -- to be used in the armed robbery case against

                                                              63

1    this defendant; correct?

2        A     That is correct.  There's a robbery detective who

3    recognized the names of -- on some of the credit cards and IDs

4    as victims of armed robberies.

5        Q     And that's why you seized that?

6        A     Yes.

7            MR. BRITT:  Okay.  That would be all the questions

8    I'd have.

9            THE COURT:  Any redirect?

10           MS. VARGAS:  No, Judge.

11           THE COURT:  All right.  Can this officer be excused?

12           MS. VARGAS:  Yes, Your Honor.

13           THE COURT:  You're good to go.  Thank you very much.

14           THE WITNESS:  Thank you, Judge.  Give these back

15   to --

16           THE COURT:  Please.

17           Are you ready for another witness or we're done?

18           MS. VARGAS:  That's it for the State, so we can

19   proceed.

20           MR. BRITT:  She rests?

21           THE COURT:  Okay.

22           MR. BRITT:  I have no evidence except for argument.

23           THE COURT:  Okay.  Then I'm ready to hear from the

24   State.

25           MS. VARGAS:  Okay.  Your Honor, as I indicated when

                                                              64

1    we started, the standard here for invalidating a search

2    warrant where a magistrate found probable cause and issued

3    it is high.  Significant deference is given that is

4    repeated throughout the relevant case law.

5        Additionally, I mean, here we have the affidavit and

6    application.  Then we've got the warrant.  Both were

7    signed by a magistrate.  We've got them.  Your Honor can

8    see them in evidence.

9        The affidavit includes a list of items.  The

10   application on the front lists certain crimes.  And then

11   also below, Your Honor is familiar with the form used with

12   these warrants.  Materials that have been used in the

13   commission of a crime, in the crimes described, stolen

14   materials, contraband, tangible evidence of the commission

15   of crimes, and intangible evidence of the commission of

16   crimes.

17       So the defense appears to be focusing to some degree

18   on the specificity of the -- the specificity of the

19   application, the affidavit, the warrant, et cetera.

20       So first of all, Your Honor, the case law is also

21   extremely clear that the magistrate is permitted to

22   consider the totality of information before him or her.

23   That includes the application and the affidavit and any

24   oral testimony which is provided.  And here, the

25   magistrate considered those items as they exist before

65

1    Your Honor and felt that probable cause existed and issued

2    that warrant.

3        Additionally, with regards to particularity, Your

4    Honor, case law also submits that an officer can describe

5    a generic class of items that he or she is seeking and

6    that is sufficient.  Even, for example, a general

7    description, i.e., item in a child molestation case

8    that -- items involved or showing evidence of child

9    molestation.  So general as that was found to be

10   sufficient.

11       The affidavit is to be included in the consideration

12   of specificity.  Residual clauses are also approved.  So

13   other related items to the crimes, any fruits of crimes,

14   that is sufficient.

15       Then also issue as marked here for other instruments,

16   articles, things, et cetera, which are designed to be used

17   or have been used in the commission with the related

18   offenses and for stolen property.  And that is exactly

19   what they found.  That is exactly what he listed in the

20   inventory that he signed and swore and left pursuant to

21   the statute, Judge.

22       Additionally, as the Court is aware, a peace officer,

23   in the process of effectuating a warrant, is not precluded

24   from discovering or seizing other stolen or embezzled

25   property, contraband, or other tangible evidence of the

66

1    commission of a crime even if it's not what is

2    specifically listed in the paperwork that he has.

3    Your Honor, there are cases, for example, in *Whatley*

4    *v. State*.  That's 335 Ga. App. 749.  In that case, even

5    the affidavits were found to be insufficient, not just the

6    application but the actual affidavit.  But that search

7    warrant was upheld based off the totality of the

8    information and the fact that the underlying magistrate

9    found probable cause based off of that.

10    I mean, there are numerous, numerous cases, Judge,

11    involving this.

12    And again, Your Honor, I will leave with the case law

13    is also extremely clear that even doubtful cases should be

14    resolved in favor of upholding a magistrate's

15    determination of the warrant as proper.

16    Here, this officer complied with statutory

17    requirements, Judge.  The magistrate reviewed that,

18    consulted with him, heard oral testimony, reviewed the

19    application, reviewed the affidavit, found probable cause,

20    and issued the warrant.  And then the warrant was executed

21    and this officer properly submitted, then, his return with

22    the inventory, under oath, a copy of which was left at the

23    scene.

24    THE COURT:  Mr. Britt.

25    MR. BRITT:  First, Judge, I would ask the Court to

67

1    grant the motion to suppress on the basis of the failure

2    of the State to tender the complete search warrant, by the

3    failure of the State to tender oral testimony that was

4    considered.  That is part and parcel of the search

5    warrant.

6        The Supreme Court and Court of Appeals have

7    consistently held, without fail, that a bright-line rule

8    for the absolute requirement to produce at the suppression

9    hearing the search warrant, the supporting affidavit in

10   order to meet its initial burden of proof.

11       Further, the courts have held that the State's

12   failure to produce the affidavits mandates the trial court

13   must grant the motion to suppress.

14       That starts with *Watts v. State*, 274 Ga. 373, 375 at

15   3376, headnote 2.

16       *Davis v. The State*, 266 Ga. 212, page 213, 1996.

17       *Smith v. The State*, 324 Ga. 542 at 544, headnote 1,

18   2013.

19       *Sosebee v. The State*, 303 Ga. App. 499, 501, headnote

20   1, 2010.

21       *Gates v. The State*, 229 Ga. 766, and it's at 767 and

22   768(b), a 1997 case.

23       *Liskey, L-i-s-k-e-y, et al. v. The State* found at

24   156 Ga. App. 45, page 46, headnote 1, 1980.  This rule is

25   analogous to the requirement that the defendant is

68

1    required and must cause the search warrant to be placed in

2    the record on appeal, and the failure to do so prevents

3    him from showing that the search warrant was improper and

4    that his motion should have been granted.

5        *Hayes v. The State*, found at 298 Ga. 106, headnote 2,

6    subsection (b), 2015.  No showing on appeal that the

7    search warrant had not been properly sworn to before the

8    issuing magistrate.

9        *Crayton v. The State*, found at 298 Ga. 792, 797,

10   798, 3(b), 2016, where there was a failure to send up all

11   the evidence the superior court had in making its decision

12   requiring a finding that the defendant had failed to show

13   that his motion to suppress should have succeeded.

14       The district attorney's office, by failure to put up

15   the evidence of the oral testimony, that this Court should

16   therefore grant that.

17       Now, the State could argue, well, we should be

18   allowed to reopen.  And I'm going to presuppose that's

19   what they're going to say, if they've got it.  Because

20   it's never been provided to me in discovery.

21       Look at *Sosebee v. The State*, 303 Ga. App. 499 at

22   page 501, headnote 1, note 4, 2010.  The Court of Appeals

23   set forth the following:  The State argues that if this

24   court concludes that the evidence of the search warrant

25   was insufficient, the case should be remanded to the trial

69

1        court for a further evidentiary hearing so that the

2        warrant and supporting affidavit can be tendered into the

3        record.

4              In that case, the warrant was not tendered into the

5        record.  The State was given a full opportunity in the

6        motion to suppress hearing to present evidence regarding

7        the search warrant.  Having failed to present any

8        competent evidence in this regard, the State is not

9        entitled to another bite at the apple, citing *DeSalvo*,

10       *D-e-s-a-l-v-o, v. The State*, 299 Ga. App. 688, a 2009.

11             So we would say, at the first opportunity, the Court

12       should find that.

13             Now, let's move on to the particularity requirement.

14       And I will call the Court back to some history between the

15       Court and I.  The Court may recall this case specifically.

16       It went up on appeal.  The *State v. Kramer*, sometimes

17       called the Dragon Con case that you and I were involved in

18       to a point where we both got out.  But we were both

19       involved in the case at the time you granted the motion to

20       suppress on particularity not being alleged in the search

21       warrant.

22             That was a two-day hearing, if the Court may recall.

23       And that's found at 260 Ga. App. 546, 2003.

24             Now, the -- there -- and the Court -- the State has

25       alleged or referred to child molestation cases.  Well,

                                                                    70

1    this was a child molestation case.  And there, they

2    searched the home for computer hardware, CPU, software,

3    documents, passwords, digital images, data security

4    devices, hand held cameras, multiple rolls of undeveloped

5    film, developed standard sized pictures, and VHS

6    videotapes.

7        That's what the command of the search warrant said in

8    that case.

9        But what you found in that case and what the

10    Supreme -- or the Court of Appeals found in that case.

11    Where the magistrate found probable cause, because we

12    moved to suppress the videotapes on the grounds that the

13    warrant was improper on its face and also that the

14    videotapes would be admissible even if the warrant was

15    found insufficient, which is what we've done here.

16        As noted, it set forth the items I have just

17    described.  Then it went on to say that our Supreme Court

18    held that the Fourth Amendment to the United States

19    Constitution, in Article I, section I, paragraph XIII of

20    the Georgia Constitution, requires a search warrant

21    particularly describe the article or articles sought.

22    While the degree of the description's specificity is

23    flexible and will vary with the circumstances involved, it

24    cannot leave the determination of what articles fall

25    within the warrant's description and are to be seized

71

1    entirely to the judgment and opinion of the officer

2    executing the warrant.  This is especially true where the

3    article or articles described in the warrant are

4    presumptively protected by the First Amendment guarantee.

5         And that's what we had in that case.

6         It goes on to say that by announcing that a warrant

7    authorizing these searches be specific facts in order to

8    focus searchingly on those.

9         Now, in the present case, in the *Kramer* case, the

10    instruments were to be used in the crime of child

11    molestation.  The warrant did not even elaborate what type

12    of video was to be seized, whether the commission was

13    commercially or privately produced, or pornographic or

14    otherwise.  The warrant left the determination of what

15    items were to be seized entirely to the discretion of the

16    officers executing the warrants and conducting the search.

17         The search warrant's description was so open-ended

18    that the warrant was a general warrant in violation of

19    both the United States and Georgia constitution.

20         Warrant authorizing the seizure -- the generic, which

21    the State refers to here -- with nothing more does not

22    pass constitutional muster.

23         Now, that's just the general rules.

24         I would call the Court's attention to the case of

25    *Bryant v. The State*, 301 Ga. 617, particularly at page

72

1   619, 622, headnote 2, 2017.  This is where a case was

2   reversed on ineffective assistance of counsel because

3   the -- he alleged that the counsel was ineffective for

4   failing to move to suppress the fruits of the search

5   warrant on particularity grounds.  We agree.  That's what

6   the Supreme Court said.

7       It goes on to talk about, because he argued that the

8   search warrant was invalid on its face because it failed

9   to state with particularity items to be seized.  We agree.

10      Then it goes through what I just -- the law I stated

11  to the Court.  It goes on and talks about *Groh*, G-r-o-h,

12  *v. United States*, which is actually a civil case coming

13  out of the United States Supreme Court found at 540 U.S.

14  558, the specific portion, that it was so obviously

15  deficient that we must regard the search as warrantless

16  within the meaning of the law.

17      So what happened there that -- and you may have

18  wondered while I was asking, well, did you -- does the

19  warrant incorporate any of the language from the

20  affidavit.  And that's what this case specifically

21  addresses.  It says the search warrant did not incorporate

22  the affidavit or the oral testimony by reference.  In

23  fact, the box marked "oral testimony" given under oath,

24  received and recorded on the affidavit was not checked and

25  there was no evidence that a copy of the video testimony

73

1    or even a transcript of the testimony was left at Bryant's

2    home.

3        The return of the search warrant and inventory

4    provide that only a copy of the warrant and receipt of the

5    items seized were left at the residence.

6        I would call the Court's attention to the case of

7    *Battle v. the State*, found at three -- excuse me, Judge,

8    275 Ga. App. 301, a 2005 case.  And there it talks about

9    the issue in the case at bar, therefore, is whether the

10    affidavit accompanied the warrant.  We noted that -- did

11    not raise this precise issue.  We raised this issue.

12        Where a search warrant fails to meet the

13    particularity requirements on its face but instead

14    incorporates a supporting document by reference, failure

15    to leave a copy of that supporting document at the

16    searched premises invalidates the warrant.  Where a copy

17    of the affidavit, or other supporting document, is in fact

18    left at the searched premises, the person subject to the

19    search has access to its contents and the purposes of the

20    warrant itself and the particularity requirements are

21    satisfied.

22        That didn't happen here.  None of that happened here.

23    We didn't have any oral testimony that was presented.  The

24    search warrant affidavit was not left.  I specifically

25    asked those questions and he said no.

74

1          THE COURT:  He said, I don't know.

2          MR. BRITT:  He said, I don't know.

3          And I said, As you're sitting here today, you can't

4      say that you did that; correct?

5          And he said, Correct.

6          So therefore, Judge, we've given you two bases to

7      grant the search warrant, and I think both of them

8      should -- it should be granted on both bases.

9          The additional hearings or the additional motions are

10     based upon the fruits of the poisonous tree.  The burden

11     is on the State to show there's no poisonous tree.

12     They've not submitted any evidence.  We were hearing

13     everything together.  So I would ask the Court to grant

14     the search warrant, suppress the ID, and suppress the

15     statement.

16         Thank you, Judge.

17         THE COURT:  Okay.  Well, let me ask a question.  This

18     is a procedural question.  I'm going to need to do some

19     research, so I'll give you a couple of options.  I don't

20     know how long it will take me.  I don't have -- there's no

21     staff back there.  So I'm -- I'm happy to try to do it and

22     regroup this afternoon.  I'm happy to try to find a

23     courtroom and meet again on another day, or I'm happy to

24     do my research and let you each submit proposed orders,

25     not in a PDF, and I'll look at them and get an order out

                                                        75

1    in the next couple of weeks.

2         So how do you want to do it?  I've delayed you guys

3    enough, so whatever you want.

4         MR. BRITT:  I'd just as soon submit proposed orders.

5    That's what I've done before.  That's what we've done

6    before.

7         THE COURT:  That would be fine.  Ms. Vargas, does

8    that work for you?

9         MS. VARGAS:  That's fine, Your Honor.  Before we

10   adjourn, if I may, I'd like to put a couple of things in

11   response to Mr. Britt's.

12        THE COURT:  Any objection?

13        MR. BRITT:  I don't know what it's going to be, so I

14   can't -- I've never been able to read minds.

15        THE COURT:  I will assume that if there is an

16   objection --

17        MR. BRITT:  -- I will make it, Your Honor.

18        THE COURT:  Yes, sir.

19        Okay, Ms. Vargas.  Go ahead.

20        MS. VARGAS:  Okay.  And I'll keep it brief, Judge.

21   You know, Mr. Britt, as he was going through, you know,

22   listed multiple cases.

23        Your Honor, with regards to this, the -- again, this

24   is a situation where we have some of the cases that he

25   cited are instances wherein the warrant and affidavit were

                                                           76

1    not tendered.  And that is not applicable here.  That has

2    been tendered.  The statutory requirements have been

3    satisfied.  It is the State's position that they have been

4    satisfied and they were tendered without objection.

5        Additionally, with regards to specificity, the --

6    although there's a case that I believe he may have cited,

7    which is *Serdula*, which is at -- or that's cited in a case

8    he did, which is a 2020 case, it says:  The Fourth

9    Amendment to the United States Constitution provides that

10   no warrants shall issue but upon probable cause, supported

11   by oath or affirmation, and particularly describing the

12   places to be searched and things to be seized.  In this

13   regard, we would explain that although a warrant cannot

14   leave the determination of what articles fall within its

15   description and are to be seized entirely to the judgment

16   and opinion of the officer executing the warrant, the

17   degree of specificity in the description is flexible and

18   will vary with the circumstances involved.  Indeed, the

19   particularity requirement only demands that the executing

20   officer be able to identify the property sought with

21   reasonable certainty.

22       Additionally, Judge, the -- there is -- in *Williams*

23   *v. State*, we held that a probable cause existed -- excuse

24   me, probable cause existed for the issuance of a warrant

25   where a police officer, in the supporting affidavit,

77

stated that he presumed that a gun and prying tool, which

had been used in a robbery the night before, were located

at the suspect's residence or car on the following day,

and we recognize that under certain circumstances an

affiant may reasonably infer that items connected with a

crime will be found in a specific location.

That's 251 Ga. 749.

Substantial deference is afforded to a magistrate's

decision to issue a search warrant based on a finding of

probable cause.  And a presumption of validity attaches to

an affidavit supporting a search warrant.  Further,

doubtful cases should be resolved in favor of upholding

search warrants.

That is *Reid v. State*, 321 Ga. App. 653, citing, I

believe, a case that Mr. Britt stated, *Williams v. State*,

303 Ga. App. 222.

In determining whether probable cause exists for

issuance of a search warrant, a magistrate's task is

simple, simply make practical, common-sense decision

whether, given all the circumstances set forth in the

affidavit before him, including the veracity and basis of

knowledge of persons supplying any hearsay information,

there is a fair probability that contraband or evidence of

a crime will be found in a particular place, *Daniels v.*

*State*, 278 Ga. App. 332.

78

1        THE COURT:  What was that page number?

2        MS. VARGAS:  It's 332.  I don't have the pin cite,

3    Judge.

4        THE COURT:  That's fine.  That's fine.

5        MR. BRITT:  Those cases are all as to probable --

6    we're not attacking probable cause.

7        THE COURT:  I understand.

8        MR. BRITT:  We're attacking a -- the particularity,

9    which is a whole different issue.

10        MS. VARGAS:  I understood.  In *Macias v. State*,

11    292 Ga. App. 225.  An offer -- it's discussing the claims

12    we state in that.  An officer's inference that items

13    sought will be at the place to be searched requires no

14    more than "a fair presumption" to be reasonable.  In

15    considering whether there was a nexus between a DeKalb

16    County drug deal and the Cobb County apartment which was

17    the subject of the search warrant, the court noted that it

18    was undisputed that the suspect lived at the apartment.

19        Here we've got Mr. Robertson involved in the crimes

20    listed on the application portion of the search warrant

21    and listed on the search warrant itself.  That is his

22    residence.  And the materials located are in compliance

23    with that, Judge.

24        I'll leave it at that for now.  Thank you.

25        THE COURT:  All right.  Anything further, Mr. Britt?

79

1          MR. BRITT:  No.  I'll address anything in my order.

2     How long?  How long do you want --

3          THE COURT:  I was getting ready to ask y'all, when

4     can I have it?

5          MR. BRITT:  What you got to try?  I know you have a

6     specially set case.

7          MS. VARGAS:  I do.  I've got multiple specially set

8     cases.

9          THE COURT:  Not rushing you, so --

10         MR. BRITT:  I could have mine done in 10 days.

11         MS. VARGAS:  I think that's reasonable.

12         THE COURT:  Okay.

13         MS. VARGAS:  We can do that.

14         THE COURT:  And just send it to my county address,

15    which is Debra, D-e-b-r-a.Turner@gwinnettcounty.com.  And

16    not a PDF, please, something --

17         MR. BRITT:  WordPerfect.

18         THE COURT:  I like WordPerfect but Word is the better

19    thing to use.

20         MR. BRITT:  I've got both of them, so I'll send both

21    of them.

22         MS. VARGAS:  And just to be clear, Your Honor, 10

23    days -- can we --

24         THE COURT:  We're going to start counting on Monday

25    or today?

                                                              80

1    MS. VARGAS: I'm pulling my calendar up. It's a

2  little bit more than 10 days, but would Friday, the 10th,

3  be okay?

4    THE COURT: That's what I was looking at. Does that

5  work?

6    MR. BRITT: Works for me.

7    THE COURT: So that's June 10th.

8    MS. VARGAS: Yes, Judge.

9    THE COURT: Okay. Very good. And we'll just wait to

10  see how I rule, and then we'll deal with whatever may or

11  may not be left. Okay.

12    MS. VARGAS: Okay. Thank you, Judge.

13    MR. BRITT: Yes.

14    THE COURT: All right. Thank you all very much. I

15  am sorry I dragged you back again today.

16    (Proceedings concluded at 11:04 a.m.)

17

18

19

20

21

22

23

24

25

81

IN THE MAGISTRATE COURT OF GWINNETT COUNTY, GEORGIA

Search Warrant Number #: 19X01539

Docket Number #: E014865

## AFFIDAVIT & APPLICATION FOR A SEARCH WARRANT

The undersigned A. Palmer, being duly sworn, deposes and says: I am a duly sworn, POST certified law enforcement officer in the state of Georgia charged with the duty to investigate criminal activity and enforce the criminal laws of this state. This is an application for a search warrant and my affidavit in support hereof. Pursuant to O.C.G.A. 17-5-20, et. seq., I am making this sworn affidavit setting forth that there exists probable cause to believe that:

   A. specific offense(s) is/are being committed/have been committed; and
   B. specifically described property and items and/or persons are to be searched for and seized and constitute evidence of these specific offenses; and
   C. the property and items and/or persons constituting evidence to be searched for and seized are located at the particular place to be searched.

There is probable cause to believe that the following crime(s) (is being/has been/have been) committed. (List all applicable offenses and code sections.)

| Offense(s) | Code Section(s) |
|---|---|
| ENTERING AUTOMOBILE OR OTHER MOTOR VEHICLE WITH INTENT TO COMMIT THEFT OR FELONY | 16-8-18 |
| THEFT BY RECEIVING STOLEN PROPERTY | 16-8-7 |

The information of person to be searched

The list of certain property, items, articles, instruments, to be searched for and seized are located in GWINNETT County, Georgia and are specifically described as follows:

The residence of James Robertson (DOB: 03.30.2002) located at 4014 Waters End Ln, Snellville, GA 30039. A single family home inside Gwinnett County.

The foregoing described property, items, articles, instruments and person(s) to be searched for and seized constitute evidence connected with the foregoing listed crime(s) and is/are: (check ALL that are applicable) (O.C.G.A. 17-5-21):

☐   designed for use in the commission of the crime(s) herein described.

☐   intended for use in the commission of the crime(s) herein described.

☑   has/have been used in the commission of the crime(s) herein described.

☑   stolen;   ☐   embezzled; property;

☑   contraband, the possession of which is unlawful.

☑   tangible, corporeal or visible evidence of the commission of the crime(s) set forth above.

☑   intangible, incorporeal or invisible evidence of the commission of the crime(s) set forth above.

☐   a person who has been kidnapped in violation of the laws of this state or who has been kidnapped in another jurisdiction and is now concealed within this state.

☐   a human fetus;   ☐   a human corpse.

☐   a person for whom an arrest/fugitive warrant has been issued. (Brown v. State, 240 Ga. App. 321)

☐   Other:

Georgia, Gwinnett County
This is to certify this is a true and correct copy of AFFIDAVIT as the same appears of record in Gwinnett County Magistrate Court.
Given under my official signature and seal of the Court this _____ day of _____ 2022
Deputy Clerk Magistrate Court, Gwinnett County, Georgia

STATE'S EXHIBIT 1

82

**The facts establishing probable cause in searching for and seizing the foregoing specifically described person(s), property, items, articles, instruments connected with the foregoing crime(s) at the location described herein are:  (Set forth facts connecting all crimes, all items to searched for & seized, at the location to be searched.)**

Your Affiant is Detective A.P. Palmer, Badge #1704. Detective Palmer is employed by the Gwinnett County Police Department. He is a sworn, P.O.S.T.-certified law enforcement officer of this state charged with the duty to enforce the laws of this State.  Detective Palmer has been a member of the Gwinnett County Police Department since September 2014. He is currently assigned to the Criminal Investigations Division, General Crimes Unit.

On October 17, 2019, I was assigned an on duty call out referencing several Entering Autos that occurred, case numbers 19-095796 and 19-095881, where five different vehicles were entered and items taken. After conducting my initial investigation, I was made aware that uniformed officers responded to both scenes and completed incident reports. For case number 19-095881, several items were taken from the two vehicles that were parked in the driveway at (4365 Hillsborough Dr, Snellville, GA 30039) (Unincorporated Gwinnett County). One of the items taken from the vehicle was a Smith and Wesson Bodyguard handgun (Serial Number: KCC4623, .380 caliber) and a Crimson Trace red laser system on it. The other items were a Cannon camera, camera lense, camera bag, a pair of Yeezy Boost 350 Zebra shoes, and a gray Jordan jumpsuit, and 6 Six Flag admission tickets. The item taken from case number 19-095796 (4170 Summer Wood Dr, Snellville, GA 30039) was a black Nautica wallet with the lettering written in gold. The wallet belonged to Fanta Dennis and contained several financial transaction cards, her driver's license, and her social security card.

After handling the call for service (case number 19-095796, 4170 Summer Woods, Dr, Snellville, GA 30039), Officer Robinson #1762 closed the call for 19-095796 at 0656 and checked the area for suspicious vehicles. While checking the neighborhood, Officer Robinson observed a vehicle occupied by two males at 0657 at Summer Woods Dr and Summer Woods Cir. When the officer attempted to conduct a traffic stop on the vehicle (Gray 2002 Dodge Caravan, tag number RQN4859), the vehicle attempted to flee the scene. The text of the call says the suspect vehicle stopped at Summers Place and Harms Way, and two males were observed running from the vehicle into the woodline. Officer Robinson was unable to apprehend either suspect as they fled the scene. At 0705, Officer Robinson asks for backup on Wendell Way because he heard a lot of commotion coming from the woodline. Wendell Way connects with Harms Way in the same neighborhood. Wendell Way also backs up to the neighborhood where Countryside Way is located. The owner of the gray Dodge Caravan was later identified as Brandy Robertson who lived at 4014 Waters End Ln, Snellville, GA 30039.

Approximately 20 minutes later, at 0734 at 4175 Countryside Way, Snellville, GA 30078, a person identifying himself as Steven H. Howard called 9-1-1 and stated he and his son were shot (case numbers 19-095804 and 19-095806). The victim stated he heard a noise coming from inside his garage and went into the garage to investigate. The victim stated a black male, wearing a black hooded sweatshirt, black pants, carrying a black backpack entered his garage. According to the victim, the suspect (later identified as Jacobi Chomicki) told him he was going to steal a bicycle. The victim said he smacked the suspect in the face with his shoe in order to protect himself, his property, and his two children inside the residence.

Mr. Chomicki (the suspect) left the victim's garage after the encounter, but returned immediately after taking off his backpack and retrieving a black semi-automatic handgun (Glock 22, .40 cal). The serial number for the Glock 22 was checked through NCIC/GCIC and the return showed it was stolen from Fairburn, Georgia during a Burglary, Fairburn Police Department case number 1700570. The victim said he observed Mr. Chomicki take the gun out of the backpack and re-enter the garage with the handgun in his hand. Mr. Chomicki pointed the weapon at the victim as the victim was attempting to close the door that lead from the garage to the inside of the residence. Mr. Chomicki discharged one .40 cal round from the Glock 22 at the victim. The bullet struck the victim in the leg, passing through the front and back of his leg and then striking his 10 year old son in the foot. The shell casing and bullet were collected from the scene by Gwinnett County CSI when they processed the crime scene.

Mr. Chomicki ran from the incident location (4175 Countryside Way, Snellville, GA 30078) and uniformed officers responded to the scene. Uniformed officers set a perimeter around the incident location and began searching for the suspect. Mr. Chomicki was found and apprehended after he was found hiding in a parked vehicle that did not belong to him at 2899 Lenora Rd (approximately 2 miles from where the Dodge Caravan was abandoned and 1 mile from the shooting). Mr. Chomicki was found with a black backpack that contained the Glock 22 (.40 cal) handgun, 11 rounds of unused .40 cal ammunition, an Apple I-phone, and $240.00 in cash. The Glock 22 was not the firearm taken from the vehicle in case number 19-095881. Mr. Chomicki was taken to Gwinnett County Police Headquarters to be interviewed.

Mr. Chomicki was also a suspect in an Entering Auto that occurred on September 9, 2019 at 6101 Parkmist Ct,

83

Buford, GA 30518 (case number 19-084578). Mr. Chomicki was seen on home surveillance cameras wearing black Adidas pants (which he was wearing at the time of his arrest) and orange and black Nike sandals.

While at Gwinnett County Police Headquarters, Mr. Chomicki was interviewed by me and several other detectives. During the interview, Mr. Chomicki admitted to being in the Dodge Caravan, tag number RQN4859, when uniformed officers attempted to pull it over. Mr. Chomicki said he ran from the officers because he had a stolen gun in his possession and he had juvenile arrest warrants in his name. Mr. Chomicki admitted to entering the victim's garage in an attempt to steal the bicycle but was confronted by the victim. According to Mr. Chomicki, he felt disrespected when the victim struck him in the face with a shoe causing him to retaliate. The suspect said he removed the Glock 22 from his backpack and re-entered the garage and discharged one round from the Glock 22, aimed at the victim. After discharging the weapon he left the scene, but was unsure if the victim was shot.

Mr. Chomicki was asked about the items taken from the entering autos that occurred in the neighborhood he was in when uniformed officers attempted to conduct a traffic stop. Mr. Chomicki denied any involvement with the entering autos and said he was there to meet a girl. When asked what the girls name was, Mr. Chomicki stated he was there with his friend and his friend was the one meeting the girl. When asked about the second suspect in the vehicle that ran from uniformed officers, Mr. Chomicki would not provide a name. Mr. Chomicki informed me the second suspect ran from the Dodge Caravan, and from uniformed officers, because he had a gun in his backpack. Mr. Chomicki was asked to describe the firearm the second suspect had in his possession when he fled the scene on foot, but Mr. Chomicki refused to provide further details. Mr. Chomicki did say he gave the second suspect the firearm, but would not state where he obtained it from. I asked if the second suspect's name was James Robertson and Mr. Chomicki got quiet. He said James Robertson was not with him. Mr. Chomicki also stated he had not been living at his mother's house (1450 Primrose Park Dr, Sugar Hill, GA 30518) but was staying with friends. After the interviews with the suspect concluded, he was transported to the Gwinnett County Jail.

While listening to jail phone calls, Mr. Chomicki was heard conversing with several people. Mr. Chomicki speaks about the second suspect that ran from the Dodge Caravan and said detectives used his full name, James Robertson. At times during the jail phone calls Mr. Chomicki refers to James Robertson as "Jug" and states that "Jug" was with him in the Dodge Caravan and he got away from uniformed officers. Mr. Chomicki admits he was at James Robertson's house the night before the entering autos and shooting occurred because they were planning to "strike." "Strike" was the term Mr. Chomicki used speaking about entering autos during the interview with detectives.

Based on my investigation, it is reasonable to believe that the Smith and Wesson Bodyguard, serial number KCC4623, .380 caliber handgun with a Crimson Trace red laser system was the firearm in James Robertson's possession when he ran from uniformed officers. Since Mr. Chomicki admits to being at James Robertson's residence (4014 Waters End Ln, Snellville, GA 30039) the night before, it is reasonable to believe the Nike sandals with the orange top from case number 19-084578 are at James Robertson's residence as well.

I request the scope of the search warrant include the following: the gun taken referenced in case number 19-095881, which is believed to be a Smith and Wesson Bodyguard, serial number KCC4623, .380 caliber handgun with a Crimson Trace red laser system; this includes parts and pieces thereof, and accessories including but not limited to holsters and magazines. Also, I request the scope include ammunition, ammunition boxes, shell casings, projectiles, fragments, gun cases, and receipts for the purchase of the firearm. Also, I request the scope include the orange Nike sandals from case number 19-084578. I request the scope include the camera equipment, bag, shoes, and clothing taken from case number 19-095881. I request the scope include the black Nautica wallet, the victim's financial transaction cards, driver's license, and social security card from case number 19-095796.

**The geographic location of the above listed specifically described person(s), property, items, articles, instruments to be searched for and seized is within GWINNETT County, Georgia, and is more particularly described as follows:**

4014 Waters End Ln
Snellville, GA, 30039

**4014 Waters End Ln, Snellville, GA 30039 is a single family home. The home is located inside a subdivision off of GA-124/Centerville Hwy, across the street from Shiloh Christian Church.**

☐ **NO KNOCK PROVISION SOUGHT:** I am seeking a "No Knock" provision so that entry can be made without knocking and without giving verbal notice of the lawful authority and purpose in execution of this search warrant. There are reasonable grounds to believe that the giving of verbal notice would: (check applicable)

　　☐ greatly increase the peril to officer(s) executing this warrant;

84

☐  lead to the immediate destruction of the evidence sought.

**In support thereof, I state the following facts**

I swear or affirm that all of the information contained in this Affidavit and all other testimony given by me is true and correct to the best of my knowledge and belief.



| | Agency:  Gwinnett County Police |
|---|---|
| Signature:<br>25th day of October, 2019 at 08:32:17 AM | |
| Prosecutor: A.  Palmer | Badge No:  B1704 |

Sworn to and subscribed before me,  This  25th day of October, 2019 at 08:33:05 AM

☑ **ORAL TESTIMONY, GIVEN UNDER OATH,**     ☐ **ORAL TESTIMONY NOT CONSIDERED**
**RECEIVED AND RECORDED**

| | **GWINNETT MAGISTRATE COURT** |
|---|---|
| Signature:<br>25th day of October, 2019 at 08:33:05 AM | |
| Magistrate :   William  Brogdon | **STATE OF GEORGIA** |

85

## IN THE MAGISTRATE COURT OF GWINNETT COUNTY, GEORGIA

Docket Number#: E014865                      Search Warrant Number #: 19X01539

## SEARCH WARRANT

### TO ANY LAWFUL OFFICER TO EXECUTE AND RETURN:

Affidavit having been made before me by a post certified law enforcement officer A. Palmer, of the following agency, Gwinnett County Police, charged with the duty to investigate criminal activity and enforce the criminal laws of the state of GEORGIA and that said officer has reason to believe that on the premises within GWINNETT COUNTY, GEORGIA, known as and more particularly described as:

> 4014 Waters End Ln
> Snellville, GA, 30039

4014 Waters End Ln, Snellville, GA 30039 is a single family home. The home is located inside a subdivision off of GA-124/Centerville Hwy, across the street from Shiloh Christian Church.

The information of person to be searched

There is probable cause to believe that the following crime(s) (is being/has been/have been) committed. (List all applicable offenses and code sections.)

| Offense(s) | Code Section(s) |
|---|---|
| ENTERING AUTOMOBILE OR OTHER MOTOR VEHICLE WITH INTENT TO COMMIT THEFT OR FELONY | 16-8-18 |
| THEFT BY RECEIVING STOLEN PROPERTY | 16-8-7 |

The list of certain property, items, articles, instruments to be searched for and seized are located in GWINNETT County, GEORGIA and are specifically described as follows:

> The residence of James Robertson (DOB: 03.30.2002) located at 4014 Waters End Ln, Snellville, GA 30039. A single family home inside Gwinnett County.

The foregoing described property, items, articles, instruments and person(s) to be searched for and seized constitute evidence connected with the foregoing listed crime(s) and is/are: (O.C.G.A. 17:5-21)

- ☐ designed for use in the commission of the crime(s) herein described.
- ☐ intended for use in the commission of the crime(s) herein described.
- ☑ has/have been used in the commission of the crime(s) herein described.
- ☑ stolen;      ☐ embezzled; property;
- ☑ contraband, the possession of which is unlawful.
- ☑ tangible, corporeal or visible evidence of the commission of the crime(s) set forth above.
- ☑ intangible, incorporeal or invisible evidence of the commission of the crime(s) set forth above.
- ☐ a person who has been kidnapped in violation of the laws of this state or who has been kidnapped in another jurisdiction and is now concealed within this state.
- ☐ a human fetus;    ☐ a human corpse.
- ☐ a person for whom an arrest/fugitive warrant has been issued. (Brown v. State, 240 Ga. App. 321
- ☐ other:

I am satisfied that there is probable cause to believe that the certain person(s), property, items, articles, and instruments, specifically described herein, is/are being concealed on the premises/person(s) above described and that reasonable grounds exist for the application and issuance of this search warrant.

You are hereby commanded to immediately search the above described premises/person(s), for the above list of specifically described person(s), property, items, articles, instruments and making the search at any time of the day or night and if any of the above-listed person(s), property, items, articles, and instruments can be

Georgia, Gwinnett County
This is to certify this is a true and correct copy this is the same appears of record in Gwinnett County Magistrate Court. Given under my official signature and seal of the Court this 13 day of Jan 2022

Deputy Clerk Magistrate Court, Gwinnett County, Georgia

STATE'S EXHIBIT 2

86

found to seize them. You shall leave a copy of this warrant and a receipt listing any person(s), property, items, articles, and instruments seized. A written inventory, signed under oath by the officer executing this search warrant, listing the person(s), property, items, articles, and instruments seized shall be prepared without unnecessary delay and shall be returned to me or to any judicial officer of this court. (O.C.G.A. 17-5-29)

**EXECUTION OF SEARCH WARRANT:** This search warrant shall be executed within ten days from the time of issuance. If the warrant is executed, the duplicate copy shall be left with any person from whom the listed person(s), property, items, articles, and instruments were seized; or if no person is available, the copy shall be left in a conspicuous place on the premises particularly described above. Any search warrant not executed within ten days from the time of issuance shall be void and shall be returned to this court. (O.C.G.A. 17-5-25)

**USE OF FORCE IN EXECUTION OF SEARCH WARRANT:** Necessary and reasonable force may be used to effect an entry into any building or property or part thereof to execute this search warrant if, after verbal notice, or an attempt in good faith to give verbal notice, by the officer directed to execute the same of the officer's authority and purpose:

      (1) The officer is refused admittance;

      (2) The person or persons within the building or property or part thereof refuse to acknowledge and answer the verbal notice or the presence of the person or persons therein is unknown to the officer; or

      (3) The building or property, or part thereof, is not then occupied by any p0erson. (O.C.G.A. 17-5-27)

**DETENTION AND SEARCH OF PERSON(S) ON THE PREMISES:** In the execution of the search warrant the officer executing the same may reasonably detain or search any person in the place at the time. The scope of the detention and search must be reasonably limited to the purposes of:

      (1) protecting an officer from attack; or

      (2) preventing the disposal or concealment of any instruments, articles, or things particularly described in the search warrant. (O.C.G.A. 17-5-28)

☐ **"NO KNOCK PROVISION."**

It appearing from affidavit docketed in this case, and such sworn oral testimony as may have been noted, if any, on the application for this search warrant, that there are reasonable grounds to believe that the giving of verbal notice would:

☐      greatly increase the peril to officer(s) executing this warrant;

☐      lead to the immediate destruction of any of the list of property, articles and instruments ordered to be seized.

I swear or affirm that all of the information contained in this Affidavit and all other testimony given by me is true and correct to the best of my knowledge and belief

| | Agency: : **Gwinnett County Police** |
|---|---|
| _A. Palmer_ — 1704<br><br>Signature:<br>**25th day of October, 2019 at 08:32:31 AM** | |
| Prosecutor:      **A. Palmer** | Badge No: **B1704** |

87

SO ORDERED, 25th day of October, 2019 at 08:33:16 AM

| | GWINNETT MAGISTRATE COURT |
|---|---|
| Signature: <br> 25th day of October, 2019 at 08:33:16 AM | |
| Magistrate:   William  Brogdon | STATE OF GEORGIA |

88

IN THE MAGISTRATE COURT OF GWINNETT COUNTY, GEORGIA

Search Warrant Number: 19X-01539
Docket Number: E014865

*(court stamp, partially illegible)*
2019 NOV -6 AH 8: 26
RICHARD ALEXANDER, CLERK
FILED IN OFFICE
CLERK MAGISTRATE COURT
GWINNETT COUNTY, GA.

### RETURN OF SEARCH WARRANT & INVENTORY
(include the entire search warrant & affidavit to insure proper & accurate docketing.)

I A. Palmer, the undersigned officer, received the search warrant on the 10/28/2019  9:00:00AM set forth upon the warrant and have executed it as follows:

☐ I did not execute the search warrant and I am returning it to this court.

☑ I did execute the search warrant and I am filling the return and inventory as follows:

On the 10/28/2019  9:00:00AM , I searched the premises particularly described in  this search warrant for the specifically listed person(s), property, items, articles and instruments.

I left a copy of the warrant, together with the receipt of the seized person(s), property, items, articles, instruments,

☑ with the following person, James Robertson's Uncle

☐ left in a conspicuous place on the premises particularly described in  the Search Warrant

The following is an inventory  of the property person(s), property, items, articles and instruments seized pursuant to execution of this search warrant:

| Quantity | Unit | Description | Disposal Type |
|---|---|---|---|
| 5 | Each | black cell phones | 0 |
| 1 | Each | pink cell phone | 0 |
| 1 | Each | silver cell phone | 0 |
| 1 | Each | S&W Handgun, .40 cal | 0 |
| 1 | Each | glock magazine | 0 |
| 1 | Each | .380 cal magazine | 0 |
| 11 | Each | .40 cal ammunition | 0 |
| 14 | Each | counterfeit $100 bil | 0 |
| 8 | Each | credit/debit cards | 0 |
| 1 | Each | insurance card | 0 |
| 2 | Each | social security card | 0 |
| 2 | Each | S. Gwinnett student | 0 |
| 2 | Each | brass knuckles | 0 |
| 1 | Each | Glock knife | 0 |
| 2 | Each | handgun holsters | 0 |
| 1 | Each | wallet | 0 |
| 2 | Each | white pills | 0 |

☐ See the attached list, consisting of  pages, labeled

This  inventory was made in the presence of  Sgt. D. Pauly #1027

I swear that is a true and detailed account of the listed person(s), property, items, articles and instruments seized by me at the execution of this search warrant.

*(signature)* 1709

Agency:  Gwinnett County Police

11/5/2019 1:55:45 PM

Prosecutor: A. Palmer

Badge No:  B1704

Sworn to and subscribed before me, 11/5/2019 1:56:12 PM

Georgia, Gwinnett County
This is to certify this is a true and correct copy of _____ SW, as the same appears of record in Gwinnett County Magistrate Court. Given under my official signature and seal of the Court this ___ day of _____

Deputy Clerk Magistrate Court, Gwinnett County, Georgia

STATE'S EXHIBIT
3

| *E.P.Powell* | GWINNETT, MAGISTRATE COURT |
|---|---|
| Magistrate: Emily Powell | State of GEORGIA |

1              C E R T I F I C A T E

2    STATE OF GEORGIA

3    COUNTY OF GWINNETT

4

5         I hereby certify that the above and foregoing is a

6    true and correct transcription, produced to the best of my

7    abilities, of the proceedings taken by me in the case

8    aforesaid.

9

10        I further certify that I am neither related nor

11   counsel to any of the parties and am not financially

12   interested in the matter.

13

14        WITNESS my hand and official seal in Gwinnett County,

15   Georgia, this 28th day of June, 2022.

16

17

18
                          Jeanine M. Ritter
19                        Certified Court Reporter
                          Certificate Number B-1270
20

21

22

23

24

25

                                                          91

# PLAINTIFF'S EXHIBIT NUMBER "2"

## Certified Transcript of Motions Hearing March 29, 2024

## State of Georgia v. Devdan Amir Yearwood, Indictment Number 20-B-00092-2

E-FILED IN OFFICE - EW
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

20-B-00092-2

4/14/2024 3:34 PM
TIANA P. GARNER, CLERK

IN THE SUPERIOR COURT OF GWINNETT COUNTY

STATE OF GEORGIA

|  |  |
|---|---|
| STATE OF GEORGIA | ) |
| | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| DEVDAN AMIR YEARWOOD-CABBEL, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**CERTIFIED TRANSCRIPT**

CASE NO.:  20-B-00092-2

Chandler, Britt & Jay, LLC

MOTION HEARING

APR 1 5 2024

RECEIVED

Transcript of the proceedings
had in the above-styled case before
the Honorable Debra K. Turner
sitting by designation for the Honorable Tracie H. Cason,
at the Gwinnett Justice and Administration Center,
75 Langley Drive, Lawrenceville, Georgia 30046
on March 29, 2024.


A P P E A R A N C E S

For the State:      Elizabeth Ann Weintraub, A.D.A.

For the Defendant:  Walter Michael Britt, Esq.


LESLIE G. CHAMPION, CCR, CVR
North Georgia Court Reporting
6074 Green Tree Lane
Gainesville, GA  30506
(770) 983-3039
ngacourtreporting@gmail.com

1

A P P E A R A N C E S:

For the State:        Elizabeth Anne Weintraub, A.D.A.
                      Gwinnett County District Attorney's Office
                      75 Langley Drive
                      Lawrenceville, GA  30046
                      (770) 822-8400
                      betsy.weintraub@gwinnettcounty.com


For the Defendant:    Walter Michael Britt, Esq.
                      Chandler Britt & Jay, LLC
                      4350 South Lee Street
                      P.O. Box 1749
                      Buford, GA  30515-1749
                      (770) 271-2991
                      wbritt@cbjblawfirm.com

2

I N D E X

                                                                PAGE

**DEDAN AMIR YEARWOOD-CABBEL -**

**MOTION HEARING**


State's Argument . . . . . . . . . . . . . . . . .          5

Defense's Response/Argument. . . . . . . . . . . .          8

State's Final Response/Argument. . . . . . . . . .         15

Defense's Final Response/Argument. . . . . . . . .         22

The Court's Ruling . . . . . . . . . . . . . . . .         27

E X H I B I T S


During this motion hearing,
no exhibits were marked or tendered.

3

*TRANSCRIPT LEGEND*

| | |
|---|---|
| *[sic]* | Wording or phrases exactly as spoken |
| *(phonetic)* | Phonetically spelled |
| *... ellipsis* | Halting in speech or unfinished sentence |
| *-- dashes* | Unintentional or purposeful interruption or change of thought |
| *(unintelligible)* | Words or phrases uttered in testimony or dialogue which the court reporter was either unable to hear, to understand, or to decipher |

*Please note:*

The following transcript may contain quoted material; such material is reproduced as read or spoken.

Proper names for which correct spelling could not be verified are spelled phonetically in this transcript.

"Uh-huh" is used to indicate an affirmative response.
"Huh-uh" is used to indicate a negative response.

4

```
 1                    P R O C E E D I N G S
 2                     STATE'S ARGUMENT
 3        MS. WEINTRAUB:  Good morning, Your Honor.  I'm Betsy
 4    Weintraub.  I am with the Drug and Gang Task Force of the
 5    District Attorney's Office, and I've only been there about
 6    six months, so we haven't met before.
 7        This is Case Number 20-B-00092-2, State versus Devdan
 8    Amir Yearwood-Cabbel.
 9        Is it Cabbel?
10        THE DEFENDANT:  That's correct.
11        MS. WEINTRAUB:  And this is -- the defendant's here
12    represented by counsel, Mr. Britt, and this is a hearing
13    on, I think, the remaining issues in the -- or the "fruit
14    of the poisonous tree" issues.
15        I want to be candid with the Court about where I am
16    on this, first of all, because it's a big box in my
17    office, and so I have done my best to catch up on it.  I
18    may not be able to -- I don't have all the knowledge about
19    the case.  I've done my best to prepare.
20        My understanding is, after reviewing the evidence
21    that I have been able to locate, is that I don't see why
22    the State would need the defendant's statement, which is
23    one of the two items that the defense is trying -- is
24    looking to dismiss, so I'm not going to argue about that.
25        With regard to the fruit of the poisonous tree, it is
```

5

1    very confusing to read through the documents and read

2    through the motions and figure out what exactly was

3    happening.

4        The State's position is that the hearing was limited

5    to the fruit of the poisonous tree issue and that the --

6    that that was to determine if the defendant's statement

7    and the eyewitness identification are fruit of the

8    poisonous tree of the search warrant which, of course, was

9    thrown out.

10       And so the evidence presented at the hearing and the

11   basis for the search warrant being thrown out was the

12   failure to provide oral testimony that was presented to

13   the magistrate at the time of the search warrant, and also

14   particularity, if I understand that correctly.  And that

15   the hearing was limited to the four corners of the search

16   warrant on that regard.

17       My understanding of this is that if the Court rules

18   in favor of the State as to the fruit of the poisonous

19   tree issue, that's -- that's where I'm a bit stuck, Your

20   Honor, because if -- there was not -- there weren't any

21   witnesses presented at the original motion to suppress

22   hearing with regard to the identification and the

23   statement, the underlying motions.

24       So there's the original motion that we're saying the

25   statement is involuntary, and the identification -- the

1    eyewitness identification is problematic on constitutional

2    grounds that are separate.

3    And so even if the State prevails on the fruit of the

4    poisonous tree issue, then the State -- I do not -- I just

5    have to ask the Court because I don't understand, like,

6    how -- I'm so confused.  I don't understand exactly how it

7    would -- we would have to present additional proof.  That

8    would be the only way that we could show that it was

9    voluntary.

10    So I think that what it comes down to is, is whether

11    the Court will allow the State to present additional

12    proof.  Because, if not, then the fruit of the poisonous

13    tree issue is really moot, if that makes sense.  Took me a

14    long time to get there.

15    THE COURT:  Yes, ma'am.

16    MS. WEINTRAUB:  So that would be the State's position

17    on that.  So that was the thing that I was going to

18    briefly address.

19    THE COURT:  And is the additional proof, is that why

20    you needed your witnesses here today?

21    MS. WEINTRAUB:  Yes, Your Honor.

22    THE COURT:  And the basis for your motion for

23    continuance?

24    MS. WEINTRAUB:  Yes, Your Honor.

25    THE COURT:  Okay.

7

1     MS. WEINTRAUB:  So that was my understanding of the

2     Court's ruling on the continuances, that we had to be here

3     today.  And I did actually have witnesses here this

4     morning, and I have -- I have one who has the photo

5     spread.  I made an effort to get everyone, but I can't.

6     So I'm stuck on that.

7         So if -- now, we're not presenting additional proof

8     as to the fruit of the poisonous tree issue.  Just if we

9     were to prevail on that, so.

10        THE COURT:  Okay.

11        MS. WEINTRAUB:  Sorry.

12        THE COURT:  Mr. Britt.

13                    DEFENSE'S RESPONSE/ARGUMENT

14        MR. BRITT:  Judge, on April 5th, Judge Cason entered

15    a nisi scheduling an all-pending-motions hearing before

16    this court.  On the date of the filing of the rule nisi,

17    and on the date of the hearing on May the 26th which

18    flowed into May the 27th, there were four motions:

19        The Motion to Suppress, based on the facial

20    invalidity of the search warrant;

21        Number two, the First Amendment to the Motion to

22    Suppress Identification Testimony, based on fruit of the

23    poisonous tree;

24        First Amendment to the Motion for Challenge of

25    Voluntariness of the Statement, based on the fruit of the

8

1    poisonous tree;

2        And Motion to Sever Trials from the Codefendant.

3        We reached an agreement at the beginning of the case

4    on the 26th telling the Court that there would be separate

5    trial.

6        Thereafter, Ms. Vargas, who was the assistant

7    district attorney at that time, was outlining to this

8    court the procedural picture and posture of the case; and

9    at that point, acknowledged the interrelation of the

10    remaining three motions and the doctrine of the fruits of

11    the poisonous tree.  That's found at pages 3 and 5 of the

12    transcript.

13        We proceeded with evidence with the lead detective in

14    this case who was involved in the statement and who was

15    involved in the photo ID lineup.

16        The Court -- the State played a portion of the

17    in-custody interview tape on the issue of standing.  We

18    stipulated that they could skip portions because they were

19    going to use it in cross-examination, and I specifically

20    said, "I'm sure they're going to tender it" -- or words to

21    the effect, "I'm sure they're going to give it to the

22    Court later on, on the other issues."

23        They never even tendered the videotape of the

24    interview where they cross-examined that.  So when it went

25    up on appeal, they couldn't even say what he did or did

9

1    not say because it wasn't even in evidence at that point

2    for that issue.  They played it before you, me, my client,

3    and that was it; and cross-examined him on that.

4         After they completed their direct, redirect -- there

5    was direct, redirect, and there was two or three redirect,

6    recrosses on the issue of standing -- you clarified in

7    your mind the issue of standing.  And after argument, you

8    found on the record that there was standing which was

9    remanded back from the Court of Appeals for a more

10    specific written order.  I thought it was clear in the

11    record there, and later, that was upheld on appeal on the

12    State's appeal.

13         The lead detective, Officer Palmer -- who is on FMLA

14    leave, apparently -- was called by the State as its sole

15    witness as to all issues -- of the last three issues.  At

16    no point was he ever, on direct or redirect, ever

17    questioned by the State as to whether the photo

18    identification or in-custody statement was solely the

19    result of the search warrant or they had done some other

20    type of investigation.

21         Now, we specifically put in our First Amendment to

22    Suppress Eyewitness Identification testimony, in paragraph

23    2, the allegations or the narrative from the Gwinnett

24    County Investigator's Report, Case Number 1909378A, which

25    was on page 12, and set forth specifically all the

                                                            10

1    information we had been provided about the photo ID

2    lineup, other than the fact we had a photocopy of the

3    photo ID lineup.

4         Additionally, in the Motion to Challenge the

5    Voluntariness of the Statement, we did the same thing as

6    to the statement, which says, "Upon completion of the

7    photo ID lineup, I drove to GCPD headquarters and utilized

8    the electronic warrants."

9         They got a warrant, they arrested him, took him in,

10    took the statement.  So I don't see where there's anything

11    else they could put up.  They had their opportunity to put

12    it up.

13         Now, specifically, in our oral arguments at the

14    completions of the hearings -- and I'm saying "hearings"

15    because there was hearings up there we done jointly -- I

16    specifically said in my oral argument, on page 75 of

17    Volume 2 --

18    (Reading) "The additional hearings or the additional

19    motions are based upon the fruits of the poisonous tree.

20    The burden is on the State to show there is no poisonous

21    tree.  They have not submitted any evidence.  We were

22    hearing everything together.  So I would ask the Court to

23    grant the search warrant, suppress the ID, and suppress

24    the statement."

25         Now, at that point, you would think the State would

11

1    have a light go off in their head or something, they would

2    think something -- if they had any evidence or if they

3    didn't have any evidence -- and say something.  They never

4    said anything.

5        They continued to talk about the probable cause of

6    the search warrant, and never really even addressed the

7    central issue in this case which was the specificity of

8    the command of the search warrant, which, in 43 years, is

9    the worst I have ever seen -- I have ever seen.

10        I have never seen that you put in that the address of

11    the house.  Never seen it.

12        The whole thrust of the State's -- since the State

13    brought it up -- the Motion to Continue was to get a

14    second bite at the apple, to put up some type of evidence

15    that was never even outlined, is not outlined here today.

16        Now, the "fruit of the poisonous tree" is a term

17    that's invoked where there's unlawful police conduct which

18    results in discovery of the evidence.  Well, here, we have

19    unlawful police conduct in the search warrant.  This court

20    and the Court of Appeals, which is the law of the case

21    now, which is what the judgment of the remittitur says, is

22    unlawful conduct.

23        Now, where you have information set forth in the

24    affidavit as obtained by an illegal wiretap or in some

25    other illegal manner, a search warrant based thereon is

12

1     not valid where an affidavit contains information or

2     averments, that is considered not to be.

3          But the case that I would draw the Court's attention

4     to, and I think I've cited it to the Court before, which

5     was the *Nix v. Williams*, at 467 U.S. 431, pages 442 to 443

6     1984, sets forth the independent source doctrine which

7     allows admission of evidence that was discovered by means

8     wholly independent of any constitutional violation, while

9     the ultimate or inevitable discovery doctrine allows

10    admission of evidence that was discovered as a result of

11    police error or misconduct, if the State establishes by a

12    preponderance of the evidence that the information

13    ultimately or inevitably would have been discovered by

14    lawful means without reference to the police error or

15    misconduct.  Inevitable discovery involves no speculative

16    elements but focuses on the demonstrated historical facts

17    capable of ready verification or impeachment.

18         The crucial difference between the doctrines, where

19    properly applied, the independent source rule exception

20    allows the prosecution to use only if it was in fact

21    obtained by lawful means.  The inevitable discovery

22    exception differs in key respects, specifically that the

23    evidence sought to be introduced at trial had not been

24    actually obtained from an independent source.

25         Nothing in this case shows that they've done either

13

1    one.

2        Here, the State failed or refused or abandoned any

3    effort to produce any evidence whatsoever to refute our

4    claim of fruit of the poisonous tree.  And, therefore, it

5    bars the introduction of the photo ID lineup, and

6    apparently they're waiving anything as to the in-custody,

7    said they're not going to use it.

8        There's no evidence in the record before this court

9    that the exceptions of the independent source doctrine or

10   the ultimate or inevitable discovery doctrine have any

11   application in this case because, as a matter of

12   undisputed fact, there is a complete absence of any fact

13   by the State and this court -- and law, and this court

14   must find that it's controlling and rule out the two.

15       I would also cite to the Court the case of -- well --

16   *State v. Toomey*, 134 Ga. App. 343.

17       There are several U.S. Supreme Court cases.

18       And there's *Vergara* -- V-e-r-g-a-r [*sic*] -- *v. the*

19   *State*, 283 Ga. 175, at page 184 and 185, headnote 2, a

20   2008 case.

21       *Stidham v. the State* which is found at 299 Ga. App.

22   858, 863, a 2009 case.

23       And *Teal v. the State*, 282 Ga. 319, at page 323,

24   headnote 2, a 2007 case.

25       All that support our position.

14

1          And I think that the Court is bound to grant both of

2     our motions based upon the State's failure in this case.

3     Thank you, Judge.

4          THE COURT:  Ms. Weintraub --

5          MS. WEINTRAUB:  Yes.

6          THE COURT:  -- any final comments?

7                    STATE'S FINAL RESPONSE/ARGUMENT

8          MS. WEINTRAUB:  Yes, Your Honor.  I would like to

9     address the eyewitness identification and the connection

10    to the motion to suppress hearing.  The motion to suppress

11    hearing, the second day on the 27th, Mr. Britt actually

12    outlined to the Court what was at issue in the case.  And

13    in that he said that the warrant is not particularized,

14    and that because the warrant is out, he said everything

15    has to be suppressed.

16         And the motion that the defense filed, the First

17    Amendment to the Motion to Suppress Eyewitness

18    Identification, within that motion there is no legal basis

19    for suppressing an eyewitness identification as fruit of

20    the poisonous tree of an illegal search.  There was no

21    legal basis cited during the arguments of counsel.  None.

22         In the First Amendment to the Motion to Suppress

23    Eyewitness Identification, the legal points that are

24    stated, the only one that is specific as to what can be

25    suppressed as "fruit" is that our courts have held that

15

1   dealing with statements obtained in violation of a

2   defendant's right to counsel, physical evidence derived

3   therefrom should be suppressed as fruit of the poisonous

4   tree.

5       So -- and I laid out in my motion for continuance all

6   the prior motions that were filed in this case, many of

7   which also referred to eyewitness identification, but that

8   is the only one that refers to the fruit of the poisonous

9   tree.  It just does not have any legal grounds for

10  suppression of that.  And so, Your Honor, that is the one

11  thing that I think the Court does have discretion on.

12      The source that I have for that is *Young v. State*,

13  282 Ga. 735.  And, Your Honor, that's a case where they

14  just discussed how the State is put on notice in a motion

15  to suppress.  And one of the -- let me get to my --

16      In that case, Your Honor, the Court looked to the

17  transcript of the motion to suppress hearing and looked to

18  the filings in the case and found that the State was not

19  sufficiently put on notice.

20      The statute that I wanted to point to -- if I can

21  find it.  If I can have just one second.

22      The 17-5-30, O.C.G.A. 17-5-30, and that's the motion

23  to suppress statute the Court's familiar with and

24  obviously refers to search and seizure.  But it also sets

25  out that, obviously, the State has the burden.  But the

16

1     motion has to be -- has to state the --

2          MR. BRITT:  Are we talking about my motion to

3     suppress that's already been granted and already been

4     upheld?

5          THE COURT:  I'm not 100 percent clear, Mr. Britt.

6          MS. WEINTRAUB:  No, we're not.

7          THE COURT:  Let me see if I can understand exactly

8     where we are.

9          We had a hearing.  The Court ruled on several

10    motions.  Heard evidence that should've been -- if I'm

11    understanding correctly -- on everything pending.  And

12    what I was looking for was the notice scheduling the

13    hearings.

14         MR. BRITT:  I have a copy of it.

15         THE COURT:  And so --

16         MS. WEINTRAUB:  The State will stipulate, the notice

17    says, "all pending motions."

18         THE COURT:  Okay.  And so what I'm hearing,

19    Ms. Weintraub, with regard to the case that you've just

20    cited to the Court, was something about the State not

21    being on notice.  But that's what I'm not understanding.

22         Because if I'm understanding Mr. Britt's argument, we

23    came for a hearing, we were here for two days on all

24    pending motions, and the State put up no evidence

25    regarding the defendant's statement and the eyewitness

17

```
 1        identification.
 2             MS. WEINTRAUB:  And I agree with all of that.
 3             THE COURT:  Okay.  And so what I understand from you
 4        this morning is that you want an opportunity to continue
 5        this hearing so that you can put up evidence in that
 6        regard?
 7             MS. WEINTRAUB:  No.
 8             THE COURT:  Okay.  What is it --
 9             MS. WEINTRAUB:  Just about the eyewitness
10        identification.
11             THE COURT:  Okay.
12             MS. WEINTRAUB:  The State's argument is that the
13        State was not on notice of the eyewitness identification
14        being addressed at that hearing on the grounds of --
15        there's not a legal basis for it to be suppressed at that
16        hearing.  I understand that it did say "all pending
17        motions" --
18             THE COURT:  Right.
19             MS. WEINTRAUB:  -- on the rule nisi, and I agree with
20        that, Your Honor.
21             THE COURT:  Okay.
22             MS. WEINTRAUB:  To be clear, would I have handled any
23        of this the same way?  No, Your Honor.  And I'm not
24        putting anyone under the bus.  I don't know what the
25        circumstances were.
```

18

1          But I do think -- I think that the question is why --
2     why Ms. Vargas did not put on that proof.  And I can't
3     answer that.

4          But I looked back through it.  I looked, you know,
5     I'm looking at this -- I'm coming into it not knowing
6     anything about this case.  And to be honest, Your Honor, I
7     wish I did because I think I could make a better argument
8     to my own office about what to do with it.  But I have to
9     come into it this way.

10          So what I looked at is, why that didn't happen, why
11     did she not address that?  And I looked at what was
12     discussed during that hearing.  How Mr. Britt framed the
13     argument, the evidence that was put on, Ms. Vargas's
14     understanding of that.  Then I looked back at the motions.

15          I think it is very clear that what's going to happen
16     at that hearing is this Third Amended Motion to Suppress
17     the Search Warrant.  I understand the rule nisi says "all
18     pending motions."  But sometimes, the Court doesn't get to
19     all pending motions in a proceeding.

20          So that hearing takes place.  What is put on is on
21     the issue of standing; and then on the next day, on the
22     issue of the search warrant.  There is never any testimony
23     about the statement.  I agree.  It was only put up for the
24     standing issue.  Never any -- any proof about the
25     eyewitness identification.

19

1        And I looked back at these motions, Your Honor, and I
2   do see why because there's no legal basis alleged for the
3   eyewitness identification to be suppressed.  And that is
4   insufficient to put the State on notice.
5        When a motion says, just at the top, First Amended --
6   and I'll just say, with regard to even the title of the
7   motion to suppress the statement, it says "First Amendment
8   to Motion to Challenge the Voluntariness of Statement."
9   So that, to me, looks like you're going to get into proof
10  about whether the statement was voluntary.
11       But then the body of the motion, it does address
12  legal grounds for suppression of the statement with regard
13  to it being fruit of the poisonous tree.
14       In the eyewitness identification motion, it says the
15  "First Amendment to Motion to Suppress Eyewitness
16  Identification."  There are no legal basis to suppress
17  identification alleged in that motion based on fruit of
18  the poisonous tree.  And so I believe that, both
19  objectively and subjectively, Ms. Vargas did not see that
20  as being part of that hearing.  And I think I understand
21  why because there is no legal grounds in there for it.
22  And so I think that's just argument.
23       And so I do feel that that issue has not been
24  addressed.  I think that the Court can hear proof on it.
25  Now what that proof will be, Your Honor, I cannot tell

20

1      you.  I'm just being candid with the Court.  But I do

2      think that there's grounds for the Court to hear it.

3          The Court, of course, has discretion to open up proof

4      anyway, even if I'm wrong, because I think the situation,

5      it is strange.  I know the Court's reviewed the record.  I

6      think it is hard to follow what exactly is going on.  Your

7      Honor was there, and I was not, so it's probably a little

8      bit easier.

9          But that would be the -- that would be the basis.

10         If I can just look at my notes, Your Honor, and see

11     if there was anything else.

12     (Counsel reviewing notes.)

13         MS. WEINTRAUB:  The one other thing that I did

14     mention in my continuance motion, I believe, is that when

15     the State was questioning the -- Officer Palmer on the

16     stand and started to veer outside talking about the four

17     corners of the search warrant, there was an objection to

18     that.  And the prosecutor did not proceed to ask any more

19     questions outside the four corners of the search warrant

20     after that.

21         So I think that also kind of reinforced the idea that

22     we're talking about the search warrant right now.  The

23     objection was -- and I cited it in my motion -- but I

24     believe it states that we're staying inside the four

25     corners here.

21

1      And so, Your Honor, we would ask that the Court allow

2    the State to be heard on the issue of eyewitness

3    identification.  And I think that it could resolve the

4    case, and I can certainly have witnesses here for that on

5    those grounds.

6      And I do apologize to the Court because I understand

7    that I am not -- I mean, I represent the people, and I am

8    trying to zealously advocate for them.  But sometimes

9    it's -- sometimes there's just not enough time.

10      But so that is all that the State is asking is for

11    the Court not to suppress the eyewitness identification as

12    fruit of the poisonous tree and to allow us to be heard on

13    that issue.  Thank you.

14      THE COURT:  Final comments, Mr. Britt.

15            DEFENSE'S FINAL RESPONSE/ARGUMENT

16      MR. BRITT:  Judge, as far as the notice goes, the

17    motion in paragraph 2 specifically says what the facts

18    were in the police report as to the photo identification,

19    verbatim.  Everything that's in there.  It's about a

20    paragraph.  That's all they've got.

21      In paragraph 3 right after that, we state, "The

22    observation that the defendant, quotation mark, seemed to

23    match the description of the second suspect in the robbery

24    of Adonte -- A-d-o-n-t-e (spelling) -- Jenkins, closed

25    quotation marks, and the fact that property was taken from

22

1    Jenkins during the robbery was located inside the house,

2    all such facts were the fruits of the poisonous tree of

3    the illegal search which resulted in the photographic

4    lineup and purported identification of the defendant."

5        Then in paragraph 4, I do basically one, two,

6    about -- I'd say about a page and a quarter of the law of

7    the fruit of the poisonous tree.  Now, how they're not on

8    notice, I have no idea.  But they were on notice.  She

9    said at the beginning, she just didn't put up no evidence

10   because she didn't have no evidence, if we're supposing.

11   She didn't have anything.

12       MS. WEINTRAUB:  Your Honor, may I just briefly

13   respond to one thing?

14       THE COURT:  Sure.

15       MS. WEINTRAUB:  In paragraph 3, as Mr. Britt pointed

16   out, it says that "those facts are fruit of the poisonous

17   tree which resulted in the photographic lineup."

18       So the facts derived from the search warrant being

19   fruit of the poisonous tree, the photographic lineup is

20   the question.  And he does cite law about fruit of the

21   poisonous tree.

22       I still, in my searching, have yet to find where an

23   eyewitness identification has been suppressed because of a

24   search warrant.  I still haven't found a legal basis for

25   that, and it's certainly not alleged there.

23

1    THE COURT:  Well, Ms. Weintraub, let me just ask, do

2    you have your witnesses here today with regard to the

3    identification?

4    MS. WEINTRAUB:  The -- with regard to the -- the

5    eyewitness identification?

6    THE COURT:  Uh-huh (affirmative).

7    MS. WEINTRAUB:  I do not have the victim here today.

8    No, Your Honor.  On that issue, may I be heard for one

9    second?

10   THE COURT:  Sure.

11   MS. WEINTRAUB:  In that case, I did, prior to -- and

12   I'm sure Mr. Britt would tell the Court, this is while --

13   as soon as this came down on remittitur, Your Honor,

14   that's when I got the case.  Mr. Britt wanted to have his

15   hearing, obviously, advocating for his client.  And, you

16   know, I emailed him after he asked for the hearing, and I

17   said, "Hey, I would like a heads-up on this.  I don't know

18   anything about it."

19   And he informed me, This is just legal argument.

20   And I also emailed the Court and I said, "Based on

21   his representation that it's just legal argument, the

22   State can be ready by the end of the month."

23   And I did rely on that representation, and I say that

24   as an officer of the Court.  I started preparing for it

25   last weekend to make legal argument only, and that's when

24

1      I realized that there was an issue.  So that is why I did

2      not subpoena witnesses.

3          Thank you, Your Honor.

4          MR. BRITT:  It wasn't a representation.  I stated to

5      her and quoted in there what the Court said.  It wasn't me

6      saying it on the record.  It's what you said.  It's only

7      legal argument.

8          MS. WEINTRAUB:  And, Your Honor, I did want to

9      mention to you that I do have the person who presented the

10     photo spread, here.  I was able to get him here.  And I

11     have the officer who was, it says in the report, was the

12     one who took the statement; but, in fact, it's not him.

13     But I have the officer who presented the photo spread.

14         THE COURT:  I'm aware that at the motion to suppress

15     hearing, there was no evidence presented regarding the

16     eyewitness identification.  And so that witness is not

17     here today, correct?

18         MS. WEINTRAUB:  Correct, Your Honor.  He was not

19     under subpoena.

20         MR. BRITT:  She said she had -- she talked to the

21     witness who presented it.

22         THE COURT:  Right.  I understand.

23         MR. BRITT:  Yeah.

24         THE COURT:  Right.  And that -- the witness who did

25     the photo ID is here?

1          MS. WEINTRAUB:  The one who put the photo spread

2     together --

3          THE COURT:  Yes.

4          MS. WEINTRAUB:  -- yes.  And we have the photo spread

5     and the admonition.  So, yes, he is here.  I have to text

6     him, but he's in the building.

7          THE COURT:  I'm sorry.  You have to text him?

8          MS. WEINTRAUB:  He's in the building.

9          THE COURT:  Oh, okay.

10         MS. WEINTRAUB:  He is not in the courtroom.

11         THE COURT:  Okay.  So, Mr. Britt, I want you to stay

12    seated when I make this comment.

13         If a witness is here, the Court is prepared to allow

14    the State to put that evidence up.  I understand we didn't

15    hear it on the two days that we had the hearing, but I'm

16    prepared to allow the State to reopen with the witness

17    that they have, but I am not prepared to continue the

18    matter.  We are going to finish today.

19         You're still in your seat which is a little

20    frightening to me.

21         MS. WEINTRAUB:  I think -- I'm sorry, I didn't mean

22    to interrupt.

23         THE COURT:  You've never met Mr. Britt, have you?  Or

24    have you?

25         MS. WEINTRAUB:  I know him, like, very well

26

1    already --

2        THE COURT:  Oh, okay.  Already.

3        MS. WEINTRAUB:  -- from our very short interaction.

4        THE COURT:  Okay.

5        MS. WEINTRAUB:  And I respect him, and he is an

6    excellent advocate for his client.  And I understand it's

7    taking him a lot of time to stay seated.

8        I would propose, Mr. Britt, I can call the witness

9    down.  I could also proffer, Your Honor, because I --

10       Mr. Britt, I don't think it --

11       MR. BRITT:  I don't accept proffers from -- on bonds

12   on people.

13       THE COURT:  No, we're -- the witness -- she said the

14   witness is here.

15       MS. WEINTRAUB:  He's here.  I'll have him come down,

16   Your Honor.  I don't think that's going to resolve the

17   issue.  That's all.

18       THE COURT:  Oh.

19       MS. WEINTRAUB:  I just -- I don't want to --

20       THE COURT:  Well, okay.  Well, if it's not going to

21   resolve the issue --

22       MS. WEINTRAUB:  I think I need the victim here.

23       THE COURT:  Okay.

24                        THE COURT'S RULING

25       THE COURT:  Okay.  Then based on what I've heard thus

27

1   far:  This matter came before the Court.  We were in court

2   for two days.  The motions had been filed.  The order

3   scheduling the hearing was clear.  The State did not

4   present any evidence regarding the eyewitness

5   identification.

6       So this is it.  And if the State is not ready to

7   present all of the evidence that's necessary today, I've

8   already denied the motion for continuous once.  I'll deny

9   it again.  I am not going to --

10      Am I understanding that the State is not seeking to

11  admit defendant's statement?

12      MS. WEINTRAUB:  No, Your Honor.

13      THE COURT:  No, you're not?

14      MS. WEINTRAUB:  No.

15      THE COURT:  I'm understanding correctly?

16      MS. WEINTRAUB:  Yes, Your Honor.  I don't have

17  witnesses here to put it in anyway.

18      THE COURT:  Okay.  And I am not going to admit the

19  eyewitness identification.

20      And, Mr. Britt, I'm going to ask you to prepare an

21  order to that effect.

22      MR. BRITT:  Would the Court rule on the eyewitness --

23  even though they say, you know -- I've been through a lot

24  of assistants in this case.  And Ms. Weintraub may or may

25  not be here if this case goes -- will the Court also rule

28

1    that the statement is precluded by the fruit of the

2    poisonous tree?

3          THE COURT:  Yes, sir.

4          MR. BRITT:  All right.  I will prepare the order

5    then, Judge.

6          THE COURT:  All right.  Anything further, Counsel?

7          MS. WEINTRAUB:  Just a little bit of clarification,

8    Your Honor.  The eyewitness identification, would the

9    Court rule on the State being on notice of that?  Of that,

10    in the suppression?

11          THE COURT:  I find that you were on notice.

12          MS. WEINTRAUB:  I figured that you would.

13          THE COURT:  Okay.

14          MS. WEINTRAUB:  But I just wanted to -- thank you.

15          THE COURT:  So, Mr. Britt, if you'll include that

16    language as well.

17          MS. WEINTRAUB:  I will, Judge.

18          THE COURT:  Okay.

19          MR. BRITT:  I would like for the Court to note that I

20    said an hour, and it's been 34 minutes.

21          THE COURT:  Yes, sir.  I see.

22          MR. WEINTRAUB:  Your Honor, could I have one second

23    to speak with Mr. Britt?

24          THE COURT:  Yeah.

25          MS. WEINTRAUB:  Mr. Britt, could I speak to you

29

```
 1      outside?

 2          THE COURT:  Yeah, step out.  I'll wait right here.

 3          MS. WEINTRAUB:  Thank you.

 4      (Whereupon, counsel exit the courtroom for an off the

 5  record discussion.)

 6          MS. WEINTRAUB:  Your Honor, we're finished.

 7          THE COURT:  Okay.

 8          MS. WEINTRAUB:  Thank you very much.

 9      (Whereupon, the proceedings are concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

30

CERTIFICATE

STATE OF GEORGIA
COUNTY OF GWINNETT

I, Leslie G. Champion, Certified Court Reporter, hereby certify that the foregoing pages numbered 1 through 30 constitute a true, correct, and accurate transcript of the testimony heard before me, an officer duly authorized to administer oaths, and was transcribed under my supervision.

I further certify that I am a disinterested party to this action and that I am neither of kin nor counsel to any of the parties hereto.

In witness whereof, I hereby affix my hand on this, the 12th day of April 2024.



Leslie G. Champion, CCR, CVR
5474-5319-0694-5024

31

# PLAINTIFF'S EXHIBIT NUMBER "3"

**Order Granting First Amendment to Suppress Eyewitness Identification and First Amendment to Motion Challenging Voluntariness of Statement Filed April 8, 2024**

**State of Georgia v. Devdan Amir Yearwood, Indictment Number 20-B-00092-2**

E-FILED IN OFFICE - EW
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

20-B-00092-2

4/8/2024 12:32 PM
TIANA P. GARNER, CLERK

# IN THE SUPERIOR COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

| | | |
|---|---|---|
| **STATE OF GEORGIA** | § | **INDICTMENT NUMBER** |
| | § | **20-B-00092-2** |
| | § | |
| **vs.** | § | |
| | § | |
| | § | |
| **DEVDAN AMIR YEARWOOD** | § | |
| **CABBEL** | § | |

### ORDER GRANTING FIRST AMENDMENT TO SUPPRESS EYEWITNESS IDENTIFICATION AND FIRST AMENDMENT TO MOTION CHALLENGING VOLUNTARINESS OF STATEMENT

It appearing to the Court that the Defendant's, **DEVDAN AMIR YEARWOOD**

**CABBEL's,** *First Amendment to Motion to Suppress Eyewitness Identification* and *First*

*Amendment to Motion Challenging Voluntariness of Statement* having come on regularly to be

heard before the Court on March 29, 2024, and after reviewing the relevant transcripts[1] and

record and hearing oral arguments of counsel, the Court makes the following findings of fact and

law[2]:

### FINDINGS OF FACT

The Court finds  as a matter of fact the following: On April 5, 2022, the Honorable Tracie H.

Cason, Judge, Gwinnett Superior entered a rule nisi scheduling "ALL PENDING MOTIONS" for

May 26, 2022, at 1:30 pm before the Court. On the date of filing the rule nisi and the date of the

hearing there were four pending motions, to-wit: 1)*Third Amendment to Motion to Suppress*

---

[1] Motions Hearing Transcript Volume 1 of 2 May 26, 2022; Motions Hearing Transcript Volume 2 of 2 May 27, 2022; and Motions Hearing Transcript June 9, 2023.
[2] The Court incorporates herein the *State's Motion to Continue Hearing* filed on March 26, 2024, *Defendant's Response to State's Motion to Continue Hearing* filed on March 27, 2024, and the *Order Denying the State's Motion for Continuance* of the March 29, 2024 Motions Hearing filed on March 28, 2024,

Attachments - 0086

*Search of 4014 Waters End Lane, Snellville, Gwinnett County, Georgia;* 2) *First Amendment to Motion to Suppress Eyewitness Identification;* 3) *First Amendment to Motion Challenging Voluntariness of Statement;* and 4) *Motion to Sever Trials.* Prior to the commencement of hearing evidence on May 26, 2022, the parties announced that an agreement had been reached as to the *Motion to Sever Trials* to allow this Defendant a separate trial on Counts 8, 9, and 10 the only offenses he was charged from his co-defendant, Jacob Alandis Chomicki (MT, 05/26/2022, V. 1, p.3). Additionally, the Assistant District Attorney in outlining to the Court the procedural posture of the case acknowledged the interrelation of the remaining three motions and the doctrine of fruit of poisonous tree (MT, 05/26/2022, V. 1, pp. 3-5).

Thereafter, on May 26, 2022, the Court heard direct testimony from Defendant as to the issue of standing (MT, 06/26/2022, V.1, pp. 1-17, 20-21, and 26), and the State played a portion of the defendant's in-custody interview tape and crossed Defendant on the contents, however, the State never tendered the videotape of the complete interview into evidence (MT, 06/26/2022, V 1, pp. 17-20, and 21-26), and the Court questioned Defendant to clarify in her mind the issue of standing (MT, 06/26/2022, V 1, pp.26-29). After hearing the argument of counsel, Judge Turner found on the record that Defendant had standing(MT, 06/26/2022, V 1, pp. 35-36) and after remand from the Court of Appeals[3] reiterated such finding, which was upheld by the Court of Appeals in the State's direct appeal.[4]

On May 27, 2022, Officer A. Palmer, Badge Number B1704, Gwinnett County Police Department who was the lead detective was called by the State as its sole witness as to the issues asserted by the three remaining pending motions: 1)*Third Amendment to Motion to Suppress*

---

[3] *Yearwood-Cabbel v. The State,* Case Number A23A0435(March 22, 2023).
[4] The State v. Yearwood-Cabbel, Case Number A23A1728(January 30, 2024) and *Judgment of Remittitur* filed herein on February 21, 2024.

2

*Search of 4014 Waters End Lane, Snellville, Gwinnett County, Georgia*; 2) *First Amendment to Motion to Suppress Eyewitness Identification*; 3) *First Amendment to Motion Challenging Voluntariness of Statement* (MT, 06/27/2022, V 2, pp.47-64). At no point while Office Palmer was on direct or redirect was he ever questioned by the State as to whether the photo identification or in-custody statement was solely the result of the facially invalid search warrant or instead by means sufficiently distinguishable to be purged of the primary taint. Was there any additional investigation that gave rise to the photo identification or in-custody statement? The State was clearly on notice of these issues and presented no evidence of any additional investigation other than that set forth in the motions. Defendant specifically alleged in paragraphs two of his fruit of poisonous tree motions all the information from discovery related thereto, and in paragraphs 3 that there was a taint by the fruit of the poisonous tree. Additionally, such verbatim portions of the investigator's report clearly reflected there was no further investigation. Moreover, the State failed to even tender into the record for the Court's consideration and appellate review the in-custody videotaped statement. Finally, the State did not respond in its oral argument before the Court, to Defendant's oral argument as to the doctrine of fruit of poisonous (MT, 05/27/2022, V 2, p. 75), nor did they even submit a proposed order to the Court even after an extension, that would have responded to a portion of Defendant's proposed order dealing with these same issues. All the State argued was probable cause finding by the magistrate and deference to be paid.

The whole thrust of the *State's Motion to Continue Hearing* is an unexplained entitlement to a "second bite of the apple" or "do-over" upon the issue of fruit of the poisonous tree. When presented with an opportunity at the hearing, the State's response was that their witness' testimony, who was present in the courthouse, would not resolve the issues on the photographic identification

lineup. Further, the State on the record waived any right to utilizing the videotaped statement at trial.

## FINDINGS OF LAW

The "fruit of the poisonous tree" is a phrase that is often invoked whenever there is unlawful police conduct which results in the discovery of evidence. *Wong Sun v. United States*, 371 U.S. 471 (1963), in announcing the "fruit of the poisonous tree" doctrine, limited the exclusionary rule to evidence to which the police could not trace to Sun "independent" and lawful source. The Supreme Court declined to hold that all evidence is fruits of the poisonous tree simply because it would not have come to light but for the illegal actions of the police. Especially because a "warrant issuing magistrate is not required to raise, *sua sponte*, possible constitutional problems," it sometimes happens as here that upon a motion to suppress evidence obtained in the execution of a search warrant, a showing is made that some of the information in the affidavit presented to the warrant issuing magistrate was acquired in a prior illegal search. The question then becomes how this affects the status of the search warrant which courts answered by saying the warrant is nonetheless valid if it could have been issued on the untainted information in the affidavit and the additional requirement that the police would have otherwise sought a search warrant.

Our courts have held that in dealing with statements obtained in violation of a defendant's right to counsel, physical evidence derived therefrom should be suppressed, as fruits of the poisonous tree. See *Vergar v. The State*, 283 Ga. 175, 184-185(2) (2008) and *Stidham v. The State*, 299 Ga. App. 858, 863 (2009). The more apt question required to be answered by this Court is whether the evidence has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. Accord, *Teal v. The State*, 282 Ga. 319, 323(2) (2007).

4

Using the rationale of *Wong Sun*, the *Teal* court adopted two functionally similar exceptions to the exclusionary rule-the independent source doctrine and the ultimate or inevitable discovery doctrine- were developed because "the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position than they would have been in if no police error or misconduct had occurred. *Nix v. Williams*, 467 U.S. 431,442-443(1984). The independent source doctrine allows admission of evidence that was discovered by means wholly independent of any constitutional violation, while the ultimate or inevitable discovery doctrine allows admission of evidence that was discovered as a result of police error or misconduct if the State establishes by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means without reference to the police error or misconduct. Inevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment. The crucial difference between the doctrines: "When properly applied, the 'independent source' exception allows the prosecution to use evidence only if it was, in fact, obtained by lawful means ... The 'inevitable discovery' exception ... differs in key respect ...: specifically, the evidence sought to be introduced at trial has not actually been obtained from independent source, but rather would have been discovered as a matter of course if independent investigations were allowed to proceed."

Here, the Court finds as a matter of fact and law State despite being on notice of Defendant's contentions as to "fruit of the poisonous tree", failed, refused, or abandoned any effort to produce any evidence whatsoever to refute Defendant's claim that the doctrine of "fruit of the poisonous tree" barred the introduction of the photographic identification lineup or in-custody statement of Defendant. There is no evidence in the record before this Court that the exceptions of

5

the independent source doctrine or the ultimate or inevitable discovery doctrine have any application to this case. Therefore, as a matter of fact (complete absence of any facts by the State) and law this Court must find the "fruit of the poisonous tree" applicable and controlling.

## ORDER OF THE COURT

**IT IS HEREBY ORDERED** that the *First Amendment to Suppress Eyewitness Identification* and *First Amendment to Motion Challenging Voluntariness of Statement* are hereby **GRANTED** and the photographic identification lineup on November 7, 2019, and in-custody statement on November 21, 2019, are not admissible in any future proceedings or trial against the Defendant, Devdan Amir Yearwood-Cabbel.

This ___1___ day of ~~March~~ April 2024.

Honorable Debra K. Turner, Senior Judge
Gwinnett Superior Court(by designation)

6

# PLAINTIFF'S EXHIBIT NUMBER "4"

# Order Granting For *Nolle Prosequi* Filed April 12, 2024

# State of Georgia v. Devdan Amir Yearwood, Indictment Number 20-B-00092-2

E-FILED IN OFFICE - EW
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

20-B-00092-2
4/12/2024 4:16 PM
TIANA P. GARNER, CLERK

# IN THE SUPERIOR COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

| | | |
|---|---|---|
| **STATE OF GEORGIA** | § | |
| | § | **INDICTMENT NUMBER** |
| | § | **20-B-00092-2** |
| **vs.** | § | |
| | § | **WARRANT NUMBERS 19W16787** |
| **DEVDAN AMIR YEARWOOD** | § | **and 19W16788** |
| **CABBEL** | § | |

### ORDER FOR *NOLLE PROSEQUI*

It appearing to the Court that the District Attorney of the Gwinnett Judicial Circuit has requested that the Court enter a *nolle prosequi* as to Counts 8, 9, and 10 of the above-styled indictment as there is insufficient evidence to prove the elements beyond a reasonable doubt and the Court finds that a *nolle prosequi* is in the economic interests of justice, IT IS HEREBY ORDERED that a *nolle prosequi* be entered in the above-styled case on Counts 8,9, and 10 as to the Defendant, DEVDAN AMIR YEARWOOD-CABBEL. Defendant is eligible for record restriction.

This 12 day of April 2024.

TRACIE H. CASON, JUDGE
GWINNETT JUDICIAL CIRCUIT

# Plaintiff's Exhibit Number "5"

# Devdan Amir Yearwood-Cabbel's Presentation of Claims to Gwinnett County et al.(OCGA § 36-11-1) Dated May 9, 2024



**CHANDLER BRITT & JAY, LLC**
Attorneys at Law

RICHARD B. CHANDLER, JR., P.C.
WALT M. BRITT, P.C.
GREGORY D. JAY, P.C.
DANIELLE BRITT MAYS
AMY L. ALLEN

4350 SOUTH LEE STREET
BUFORD, GEORGIA 30518
PHONE 770.271.2991
FAX: 770.271.9641

May 9, 2024

VIA FEDERAL EXPRESS TRACKING NUMBER 776309487907
AND EMAIL(Mike.Ludwiczak@gwinnettcounty.com )

Michael P. Ludwiczak, Esq.
County Attorney
Gwinnett County Department of Law
75 Langley Drive
Lawrenceville, GA 30046-6935

Re: DEVDAN AMIR YEARWOOD-CABBEL
     PRESENTATION OF CLAIMS

Dear Mr. Ludwiczak:

Please accept this notice of claims against GWINNETT COUNTY, DETECTIVE N.A. BAVA, GCPD BADGE NUMBER 1665, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, DETECTIVE A.P. PALMER, GCPD BADGE NUMBER 1704, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, DETECTIVE J.M. BOYD, GCPD BADGE NUMBER 1547, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, INVESTIGATOR S.R. DONAHUE, GCPD BADGE NUMBER 1622, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, CHIEF JAMES D. McCLURE, CHIEF OF POLICE OF GCPD, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, AND/OR ASSISTANT CHIEF EVERETT SPELLMAN, COMMANDER OF GCPD TRAINING DIVISION, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY pursuant to OCGA § 36-11-1. You are being served in your official capacity of County Attorney. *Croy v. Whitfield County*, 301 Ga. 380(2017)("We hold that presentment to the county attorney -inside or outside-is presentment for the purposes of OCGA § 36-11-1.) The relevant time period of my client's claim is from November 21, 2019 (date of illegal arrest) through and including April 12, 2024 *(nolle prosequi* of all charges). If you contend that this presentation of claims is in any way deficient, then we request that you notify the undersigned in writing within ten(10) days of receipt. We assert that the claims presented are malicious prosecution, negligent hiring, training, supervision, and assignment to the GCPD Criminal Investigation Division, Robbery Unit, and civil rights violations under color of state law.

The information supplied herein is provided for the purposes of allowing you and Gwinnett County to conduct an investigation of this matter and determine if the claim should be settled without litigation. Should you require additional information for that determination, please contact the undersigned at your convenience.

Michael P. Ludwiczak, Esq.
County Attorney
Gwinnett County Department of Law
Page 2
May 9, 2024

## UNDISPUTED FACTS OF THE CLAIM

Specifically, my client incorporates the following into his presentation of claim: 1) Gwinnett County Police Department Incident Report 19-0990404; 2) State of Georgia v. Devdan Amir Yearwood Cabbel, Warrant Number 19W16059, Gwinnett Magistrate Court; 3)Gwinnett County Police Department Criminal Investigations Division-Robbery Unit Investigator's Report 19-093788 and 19-094812; 4) In Re: Search Warrant Number 19X01539, Docket Number E014865, Gwinnett Magistrate Court; 5) State of Georgia v. Devdan Amir Yearwood-Cabbel, Warrant Numbers 19W16787 and 19W16788, Gwinnett Magistrate Court; 6) State of Georgia v. Devdan Amir Yearwood-Cabbel, Indictment Number 20-B-00092-2(Counts 8, 9, and 10), Gwinnett Superior Court; 7) *Devdan Amir Yearwood-Cabbel v. The State*, Application Number A22I0217, Court of Appeals of Georgia; 8) *Devdan Amir Yearwood-Cabbel v. The State*, Application Number A23I0047, Court of Appeals of Georgia; 9) *Devdan Amir Yearwood-Cabbel*, Docket Numbers A23A0067 and A23A0435, Court of Appeals of Georgia; and 10) *The State v. Devdan Amir Yearwood-Cabbel*, Docket Number A23A1728, Court of Appeals of Georgia.

In summary the Gwinnett Superior Court and Court of Appeals of Georgia have ruled in favor of Devdan Amir Yearwood-Cabbel at all times relevant herein as follows:1) He had standing to challenge the seizure of evidence as a social guest or invited guest; 2) In Re: Search Warrant Number 19X01539, Docket Number E014865, Gwinnett Magistrate was facially invalid as the search and seizure was that of a general search and inquisition, as the search warrant failed to describe with some degree of specificity the items to be searched for and seized; 3) The observation that Devdan Amir Yearwood-Cabbel "seemed to match the description of the second suspect in the robbery of Adonte Jenkins" and the fact that property taken from Jenkins during the robbery was located inside of the house" all such facts were the fruit of the poisonous tree of the facially invalid search warrant which resulted in the suggestive photographic lineup and purported identification, which are also fruit of the poisonous; 4)The arrest warrants, arrest of Devdan Amir Yearwood-Cabbel, and subsequent in-custody interview were all fruit of the poisonous tree of the facially invalid search warrant which resulted in the arrest warrants, arrest of Devdan Amir Yearwood-Cabbel, and in-custody interview, which are also fruit of the poisonous tree; 5) The Gwinnett Superior Court entered a *nolle prosequi* of the indictment on April 12, 2024; 6) Devdan Amir Yearwood-Cabbel was incarcerated in the common jail of Gwinnett County without bond, during the entirety of the COVID-19 lockdown, from November 21, 2019 to June 28, 2023, or a total of 1,316 days; 7) Devdan Amir Yearwood-Cabbel was required to comply with and pay for a pretrial electronic release and monitoring program, from June 28, 2023 to April 8, 2024, or a total of 286 days; and 8) Under the authority of *Groh v. Ramirez et al.*, 540 U.S. 551,563-565(2004) none of the above-listed potential defendants are entitled to qualified immunity. Compare the command of the search warrant in *Groh* to In Re: Search Warrant Number 19X01539, Docket Number E014865, Gwinnett Magistrate. Additionally, there is clear and binding state precedent that would negate any claim of qualified immunity. See *Battle v. The State*, 275 Ga. App. 301(2005) as cited by the trial court herein and *Bryant v. The State*, 301 Ga.617, 619-620(2)(2017) citing and relying in whole upon *Groh*.

Michael P. Ludwiczak, Esq.
County Attorney
Gwinnett County Department of Law
Page 3
May 9, 2024

## COMPENSATION OF THE CLAIMS

As compensation for all the claims Devdan Amir Yearwood-Cabbel has against Gwinnett County, its departments (including the Gwinnett County Police Department), my client demands the amount of his loss of **$7,250,000.00**. The payment of such sum also would resolve claims against the individuals employed by Gwinnett County. If you desire to discuss this matter, please advise and we can set up a mutually agreeable time to meet. However, we look forward to receiving a written response within thirty (30) days. No action to make a civil recovery for these claims will be commenced except upon the expiration of thirty (30) days following receipt of this notice, or Gwinnett County's denial of the claim whichever occurs first.

With best personal regards, I remain

Yours very truly,

CHANDLER, BRITT & JAY, LLC

Walt M. Britt

WMB/ab

cc. Devdan Amir Yearwood-Cabbel(via email only)
    Andrea Ward(via email only)
    Gregory D. Jay, Esq.(via email only)
    John A. Mays, Jr.(via email only)

# PLAINTIFF'S EXHIBIT NUMBER "6"

## Order Granting Third Amendment to Suppress Search of 4014 Waters End Lane, Snellville, Gwinnett County, Georgia Filed May 11, 2023

## State of Georgia v. Devdan Amir Yearwood, Indictment Number 20-B-00092-2

E-FILED IN OFFICE - EW
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

20-B-00092-2

5/11/2023 2:36 PM
TIANA P. GARNER, CLERK

# IN THE SUPERIOR COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

STATE OF GEORGIA                    §

vs.                                §         INDICTMENT NUMBER 20-B-00092-2

DEVDAN AMIR YEARWOOD CABBEL§

### ORDER GRANTING THIRD AMENDMENT TO MOTION TO SUPPRESS SEARCH OF 4014 WATERS END LANE, SNELLVILLE, GWINNETT COUNTY, GEORGIA.

DEVDAN AMIR YEARWOOD CABBEL filed his *Third Amendment to Motion to Suppress Search of 4014 Waters End Lane, Snellville, Gwinnett County, Georgia* on February 21, 2022, along with his *First Amendment to Motion to Suppress Eyewitness Identification* on February 21, 2022, and *First Amendment to Motion Challenging Voluntariness of Statement* on February 21, 2022, seeking suppression of items seized on October 28, 2019 during the execution of a search warrant. Defendant alleges that "the search and seizure was that of a general search and inquisition, as the warrant itself fails to describe with some degree of specificity the places to be searched and the items to be searched for and seized," and that the resulting photo identification lineup and in-custody statement were the "fruit of the poisonous tree." These matters were scheduled for a hearing on May 26-27, 2022. After considering the evidence presented and the argument of counsel, the Court entered an order Denying the Motions. Defendant filed for a Certificate of Immediate Review and the Court of Appeals remanded the matter back to the Court for clarification. After reviewing the hearing transcripts and the proposed orders from counsel, the Court finds as follows:

## PART I

## FINDING OF FACTS

Defendant, DEVDAN AMIR YEARWOOD CABBELL, is charged with the offenses of Armed Robbery (OCGA §16-8-41), Aggravated Assault (OCGA § 16-5-21), and Possession of a Firearm During Commission of a Felony (OCGA § 16-11-106). He claims a possessory interest in and to the seized articles, including but not limited to, all items referred to in the "Return of Search Warrant & Inventory" dated November 5, 2019 (State's Exhibit 3), and that he had a reasonable expectation of privacy as an overnight guest in the residence.

On October 25, 2019, at approximately 08:32:17 am, Detective A.P. Palmer, GCPD, prepared an Affidavit and Application for Search Warrant for the premises known as 4014 WATERS END LANE, SNELLVILLE, GWINNETT COUNTY, GEORGIA, alleging **"The list of certain property, items, articles, instruments to be searched for and seized are located in GWINNETT COUNTY, GEORGIA and are specifically described as follows: The residence of James Robertson (DOB: 03.30.2002) located at 4014 Waters End Ln, Snellville GA 30039. A single-family home inside Gwinnett County."** (State's Exhibit "1" Affidavit & Application for a Search Warrant, Search Warrant Number 19X01539, Docket Number E014865, Gwinnett Magistrate Court, p. 1.) Further, the Search Warrant itself (State's Exhibit "2") identified **"The list of certain property, items, articles, instruments to be searched for and seized are located in GWINNETT COUNTY, GEORGIA and are specifically described as follows:   "The residence of James Robertson (DOB: 03.30.2002) located at 4014 Waters End Ln, Snellville GA 30039. A single-family home inside Gwinnett County." Exhibit "B" Search Warrant, Search Warrant Number 19X01539, Docket Number E014865, Gwinnett Magistrate Court, p. 1.)** Additionally, Detective Palmer testified that investigators from the robbery unit were present

during the search and identified and seized the items related to the charges against Defendant, which had no relationship to the "entering automobile or other motor vehicle with intent to commit theft or felony and theft by receiving stolen property" alleged in the affidavit as the crime committed. However, the officers claimed a nexus between the property found during the search relating to the unrelated armed robbery and Defendant being on the premises.

In support thereof, Detective A.P. Palmer averred in the Affidavit & Application for a Search Warrant (State's Exhibit "1"), certain facts sufficient on their face to establish the existence of probable cause. The last paragraph of the averments set forth "the scope of the search warrant" which statements and allegations did particularize the items to be seized in the Affidavit & Application for a Search Warrant (State's Exhibit "1")  However, there was no residual clause, there were no appropriate words of incorporation, and the affidavit did not accompany the search warrant (State's Exhibit "3").

Additionally, Detective Palmer did present sworn oral testimony to supplement the averments set forth in the Affidavit. (State's Exhibit "1", pp. 1 and 3-4). However, the State did not introduce that oral testimony at the hearing on the motion to meet its initial burden of proof.

On October 25, 2019, at approximately 08:33:16 am., the search warrant was issued by the Gwinnett County Magistrate Court (State's Exhibit  "2").  Subsequently thereto on October 28, 2019, at 9:00 am   said search warrant was executed on the premises and a Return of Search Warrant & Inventory was filed on November 6, 2019 (State's Exhibit "3").

## PART II

## CONCLUSIONS OF LAW

## STANDING-EXPECTATION OF PRIVACY

At the commencement of the hearing, the State made an oral motion to dismiss the motion to suppress alleging that the Defendant had no standing to challenge the search and seizure and that Defendant was required to produce evidence on this issue. After hearing testimony from the Defendant and Detective Palmer and a portion of the in-custody statement of the Defendant, the Court finds in favor of standing. While somewhat confusing as to the dates of the search, arrest of defendant that day, subsequent arrest on the armed robbery, and the day of statement Defendant, the Court finds that Defendant  was a regular overnight guest in the residence, had been staying there two-three nights prior to the 9:00 am  execution of the search warrant, was legally upon the premises as an invited guest, and had a bag of clothes and toiletries with him located in the premises. The United States Supreme Court in <u>Minnesota v. Olson,</u> 495 U.S. 91(1990) held that an overnight guest in a residence has a reasonable expectation of privacy in the residence. The State's objection is without merit and the Court finds, both as a matter of fact and law, that Defendant had standing to challenge the search.

## SEARCH WARRANT WAS IMPROPER ON ITS FACE

Defendant contends that the search warrant and the search and seizure were improper as the warrant itself fails to describe with some degree of specificity the places to be searched and the items to be searched for and seized. Thus, the search warrant is violative of the Fourth Amendment of the Constitution of the United States, Art. 1, § 1, ¶ 13 of the Constitution of the

7

State of Georgia of 1983, and OCGA § 17-5-21(a). The search warrant authorized the search and seizure of **"The residence of James Robertson (DOB: 03.30.2002) located at 4014 Waters End Ln, Snellville GA 30039. A single-family home inside Gwinnett County." Exhibit "B" Search Warrant, Search Warrant Number 19X01539, Docket Number E014865, Gwinnett Magistrate Court, p. 1.)** Here, the warrant left the determination of what items were [to be seized] entirely to the discretion of the officers executing the warrant and conducting the search. The warrant authorizing the search failed to identify the "items to be seized." Nor did the search warrant incorporate the affidavit or the oral testimony by reference. *See also*, Battle v. The State, 275 Ga. App. 301(2005) (when a warrant does not specifically set forth the items to be seized with particularity, the state may not rely on the search warrant application or affidavit, unless the affidavit accompanies the search warrant and is left with the target at the time of the search.)

Here the Court finds as a matter of fact and law that although the application in the affidavit particularly described the place to be searched and the contraband law enforcement expected to find, the warrant itself was less specific; it failed to identify any of the items that law enforcement intended to seize. In the portion of the form that called for a description of the 'person or property' to be seized, the investigator typed a description of the Robertson residence rather than the alleged weapons and items taken in the entering automobile or other motor vehicle with intent to commit theft or felony and/or theft by receiving stolen property. The warrant did not incorporate the itemized list contained in the application in the final paragraph of the narrative. It did, however, recite that the Magistrate was satisfied the affidavit established probable cause to believe that contraband was concealed on the premises, and that sufficient grounds existed for the warrant's issuance. When the officers departed the search, law enforcement left a copy of the warrant with "James Robertson's Uncle", but not a copy of the application or a transcript of the oral testimony.

Inasmuch as law enforcement did not have a warrant particularly describing the items they intended to seize, the search was presumptively unreasonable and unconstitutional under the Fourth Amendment of the Constitution of the United States, Art. 1, § 1, ¶ 13 of the Constitution of the State of Georgia of 1983, and OCGA § 17-5-21(a).

**FAILURE TO TENDER COMPLETE SEARCH WARRANT BY OMITTING EVIDENCE OF "ORAL TESTIMONY, GIVEN UNDER OATH, RECEIVED AND RECORDED**

At the suppression hearing, the State failed to introduce the "oral testimony, given under oath, received and recorded" as noted in the search warrant. This omission constitutes a fatal defect of the State to meet its initial burden of proof, and mandates that this Court must grant the motion to suppress.

**IT IS HERBY CONSIDERED ORDERED AND ADJUDGED** that based upon the foregoing the Court **GRANTS** the *Third Amendment to Motion to Suppress Search of 4014 Waters End Lane, Snellville, Gwinnett County,*

This 11th day of May, 2023.

**DEBRA K. TURNER, SENIOR JUDGE**
**By designation**

# PLAINTIFF'S EXHIBIT NUMBER "7"

## Judgment on Remittitur Filed February 21, 2024

## <u>State of Georgia</u> v. <u>Devdan Amir</u> <u>Yearwood</u>, Indictment Number 20-B-00092-2

E-FILED IN OFFICE - EW
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
20-B-00092-2
2/21/2024 11:22 AM
TIANA P. GARNER, CLERK

# IN THE SUPERIOR COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

| | | |
|---|---|---|
| **STATE OF GEORGIA** | § | |
| | § | **INDICTMENT NUMBER** |
| | § | **20-B-00092-2** |
| **vs.** | § | |
| | § | |
| | § | |
| | § | |
| **DEVDAN AMIR YEARWOOD** | § | |
| **CABBEL** | § | |

### JUDGMENT ON REMITTITUR

It appearing to the Court that the above-styled case having been appealed by the State of Georgia to the Court of Appeals of the State of Georgia, and on January 30, 2024, the Court of Appeals having **AFFIRMED** the decision of this Court's *Order Granting Third Amendment to Motion to Suppress Search of 4014 Waters End Lane, Snellville, Gwinnett County, Georgia*[1];

IT IS HEREBY ORDERED AND ADJUDGED that the opinion and the attached remittitur of the Court of Appeals of the State of Georgia be entered on the minutes of this Court, as the judgment of this Court, and the ruling by the Court Of Appeals shall be binding in all subsequent proceedings herein and in the Supreme Court or the Court of Appeals as the case may be. *Pierce v. The State*, 278 Ga. App. 162, 163(1)(2006).

This 21st day of February 2024.

TRACIE H. CASON, JUDGE
GWINNETT SUPERIOR COURT

---

[1] *The State v. Yearwood-Cabbel*, Slip Op. A23A1728(Court of Appeals 01/30/2024).